

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDGE TORRES

SHEILAH FELICIANO,

    Plaintiff,

        v.

GENERAL MOTORS COMPANY,

    Defendant.

14 CV 6374

RECEIVED
AUG 1 1 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## CLASS ACTION COMPLAINT

1.    Plaintiff, Sheilah Feliciano, individually and on behalf of all others similarly situated, alleges for her Class Action Complaint against Defendant General Motors Company ("Defendant" or "General Motors"), as follows:

### INTRODUCTION

2.    This is a class action seeking monetary damages, restitution, and declaratory relief from General Motors, notably arising from its practice of engaging in unfair and deceptive trade practices in connection with the merchandising and sale of the Chevrolet Cruze.

3.    Since 2010, General Motors, a car manufacturer, has sold hundreds of thousands of vehicles under the Chevrolet Cruze brand name throughout the United States.

4.    Chevrolet Cruzes use antifreeze in order to protect the various mechanical components of the Chevrolet Cruze by keeping the water in the car's radiator and engine from freezing in cold temperatures and boiling in hot temperatures.  It also is used to lubricate the moving parts it comes in contact with.  General Motors promised and/or warranted in its

advertising and marketing of the Chevrolet Cruze to potential buyers that it would operate safely and reliably. This promise turned out to be false in several material respects.

5.      In reality, the Chevrolet Cruze has a serious mechanical defect that causes antifreeze to leak from the radiator (hereinafter referred to as the "Antifreeze Leakage Defect"). The Antifreeze Leakage Defect can lead to mechanical troubles and/or can cause a malodorous smell in the passenger compartment.   General Motors concealed and did not fix a serious Antifreeze Leakage Defect plaguing all model year 2011 or newer Chevrolet Cruzes.

6.      The Chevrolet Cruze has an Antifreeze Leakage Defect where antifreeze fumes emanate into the passenger compartment, causing a noxious smell.

7.      In press releases, sales literature, brochures, advertisements, and other consumer documents, General Motors has consistently promoted the Chevrolet Cruze as being "safe," "reliable," and, in essence, "more for your money."

8.      On Defendant's 2012 product page, it stated:

Cruze proved itself in some hostile environments: continuous driving in the heat of the Arabian Desert, high altitude in the Alps, intense moisture in Thailand, and more. Then it was put through its paces on some of the best test tracks in the world, including the famed Nürburgring in Germany, a beastly track and proving grounds generally reserved for high-performance or track-ready vehicles.

Cruze is one of the most tested vehicles in Chevrolet history….

9.      Even today, Defendant touts the benefits and safety: "Cruze goes beyond your typical compact car. Its modern styling on the exterior hints at the ground-breaking vehicle inside — one so efficient, so safe and so technologically advanced, it redefines the category."

10.      Yet right away, there were problems, and on May 9, 2012 on the car forum CruzeTalk.com, user "cruze 2011" posted:

well after owning my 2011 cruze since december 2011 and 22 ooo miles its been back to the dealer several times for the coolant issue and today after the dealer

ship told me there is no fix until chevy comes up with one i called chevrolet customer assistance i dont think its right i have to continue to drive this car with the coolant smell in it the dealer has put die in it at lease 2 times and found nothing is leaking. has anybody had their cars fixed yet with this issue?

11.     If the "Cruze is one of the most tested vehicles in Chevrolet history," perhaps Defendant does not historically test its vehicles' cooling systems.

12.     General Motors, through its agents, markets and promotes the Cruze as a better and cheaper alternative to other, more popular vehicles manufactured by its competitors, including Honda Motor Company and Volkswagen.

13.     General Motors received reports of antifreeze related complaints that placed General Motors on notice of the serious design and mechanical defects presented by the Antifreeze Leakage Defect.  Indeed, General Motors has issued at least two Service Bulletins intended to correct the Antifreeze Leakage Defect.

14.     On information and belief, the number of complaints may prove to be much greater once the complaints known only to General Motors are analyzed.

15.     Because of the Antifreeze Leakage Defect, the Chevrolet Cruze diminishes in value at a faster rate than it would without the Antifreeze Leakage Defect.  Plaintiff and the proposed Class would not have purchased the Chevrolet Cruze if they knew of the Antifreeze Leakage Defect.  Alternatively, had they known of the Antifreeze Leakage Defect, Plaintiff and the proposed Class would not have paid as much for the Chevrolet Cruze.

16.     Despite General Motors notice of the Antifreeze Leakage Defect in Chevrolet Cruzes, General Motors did not disclose to consumers that Chevrolet Cruzes—which General Motors for years had advertised and/or warranted as "safe" and "reliable" – were in fact not as safe or reliable as a reasonable consumer expected due to the Antifreeze Leakage Defect.  Rather

than disclose the truth, General Motors concealed the existence of the Antifreeze Leakage Defect and promised consumers that any known defects had been corrected.

17. Consumers have been complaining about the Antifreeze Leakage Defect online at various consumer complaint websites.[1] Despite years of warnings, General Motors has still failed to properly disclose, explain, or fix the underlying problems with the Chevrolet Cruze. This leaves thousands of Chevrolet Cruze owners with vehicles that have an Antifreeze Leakage Defect causing odorous fumes to emanate in the passenger compartment of the Chevrolet Cruze, causing severe economic harm to the Chevrolet Cruze owners.

18. The Chevrolet Cruze's Antifreeze Leakage Defect is preventable. For example, other cars in the same class of cars as the Chevrolet Cruze do not have the same Antifreeze Leakage Defect.  Furthermore, General Motors has successfully produced cars that do not have an Antifreeze Leakage Defect.

19. When owners of the Chevrolet Cruze became aware of the Antifreeze Leakage Defect and notified General Motors of the problem through one of its agents, General Motors still did not correct the Antifreeze Leakage Defect.  Once owners of the Chevrolet Cruze began complaining on complaint boards on websites and other public fora, the public realized that General Motors had not corrected the Antifreeze Leakage Defect, the value of Chevrolet Cruze cars diminished.  Chevrolet Cruze owners were astonished and shocked to see the rapid depreciation of their Chevrolet Cruze.

20. General Motors has been unable or unwilling to provide an adequate repair.

---

[1]   *See, e.g., inter alia*, http://www.aboutautomobile.com/Complaint/2012/Chevrolet/Cruze/Engine+and+Engine+Cooling+System; http://www.aboutautomobile.com/Complaint/2011/Chevrolet/Cruze/Engine+and+;Engine+Cooling+System; http://www.faqs.org/car/chevrolet-cruze/engine-and-engine-cooling/, last viewed July 31, 2014. https://www.youtube.com/watch?v=t8uxX4SQnoQ (last viewed August 6, 2014).

21.    Because General Motors cannot or will not provide an adequate repair, the Antifreeze Leakage Defect harms every owner of a Chevrolet Cruze because it directly affects the operation, safety, and the individual value of every Chevrolet Cruze in the marketplace.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant.  See 28 U.S.C.  § 1332(d)(2)(A).  This Court also has personal jurisdiction over Defendant because it is authorized to do business and in fact does business in this state and District and Defendant has sufficient minimum contacts with this state and District, and/or otherwise intentionally avails itself of the markets in this state and District through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

23.    Venue is proper in this District under 28 U.S.C. § 1391.  Defendant does substantial business in the State of New York and within this District, advertises in this District, receives substantial compensation and profits from the sales of its automobiles and other goods and services in this District, listed its stock on the NYSE, and has breached contracts and warranties in this District so as to subject it to *in personam* jurisdiction in this District.

## THE PARTIES

24.    Plaintiff, Sheilah Feliciano, ("Plaintiff" or "Plaintiff Feliciano") is a resident and citizen of the State of New York.

25.     Plaintiff brings this action in Plaintiff's own right and on behalf of all others similarly situated.   Plaintiff Feliciano has incurred a financial loss as a result of Plaintiff's purchase of a Chevrolet Cruze.

26.     Defendant, General Motors, is a Delaware Corporation with its principal place of business in Detroit, Michigan and lists its stock on the NYSE

27.     General Motors designs, manufactures, markets, distributes, and sells Chevrolet Cruzes in New York and throughout the United States.

28.     General Motors distributes Chevrolet Cruzes and sells these Chevrolet Cruzes through its network of dealers.

29.     Money received from the purchase of a General Motors vehicle from a dealer flows from the dealer to General Motors.

30.     Money received by the dealer from a purchaser can be directly traced to General Motors.

**FACTUAL BACKGROUND**

31.     General Motors began selling the Chevrolet Cruze in the United States in 2010. The Chevrolet Cruze is four-door, five-passenger sedan.

32.     The Chevrolet Cruze requires antifreeze to ensure that the mechanical components of the vehicle run properly. However, the Chevrolet Cruze has an Antifreeze Leakage Defect (the "Defect").

33.     General Motors has a three (3) year/36,000 express warranty that covers the defect at issue.

34.     The sale of the vehicle and the warranty create privity between Defendant and individual consumers who purchased the Chevrolet Cruze, like Plaintiff and the proposed Class

Members, by, among other things, making its express warranty directly to and for the benefit of Plaintiff and the proposed Class, and making its warranty part of the basis of the bargain and inducement to purchase its product.

35.     General Motors' express written warranty does not disclaim the implied warranty of merchantability.

36.     Despite this express warranty, Defendant has known for years of the Antifreeze Leakage Defect and the smell associated with the leak.

37.     A multitude of customers, including Plaintiff Feliciano and other proposed Class Members, have complained and submitted their Chevrolet Cruzes for repair work related to this Antifreeze Leakage Defect.

38.     The Antifreeze Leakage Defect is a systemic design, materials, and/or workmanship defect and not merely a manufacturing peculiarity of a select number of Defendant's Chevrolet Cruzes.

39.     The Antifreeze Leakage Defect has, does, or will affect all members of the proposed Class, including Plaintiff Feliciano.

**THE DEFECT IN PLAINTIFF FELICIANO'S CHEVROLET CRUZE**

40.     On or about January 8, 2013, Plaintiff purchased a 2011 Chevrolet Cruze for approximately $14,265.60, plus a $11,121.60 finance charge, from Spurr Chevrolet Buick Pontiac General Motors Company ("Spurr Chevrolet") in Brockport, New York, bearing the Vehicle Identification Number 1G1PF5S93B7267691.

41.     Plaintiff Feliciano is a consumer and purchased the Chevrolet Cruze primarily for personal use.

42.     Plaintiff Feliciano purchased the Chevrolet Cruze because of familiarity with

7

General Motors' brand and representations of quality through years of General Motors' television and print advertisements.

43.     Plaintiff Feliciano's purchase of a 2011 Chevrolet Cruze from Spurr Chevrolet included a limited warranty.  The limited warranty provided that cars with "36,000 miles, but less than 80,000 miles, coverage will apply for sixty (60) days after delivery or three thousand (3,000) miles[.]" At the time of purchase, the 2011 Chevrolet Cruze's odometer read 54,413 miles.

44.     In February of 2013, within the warranty period, Plaintiff Feliciano's Chevrolet Cruze began exhibiting the Antifreeze Leakage Defect.

45.     Plaintiff Feliciano notified General Motors through its agent, Spurr Chevrolet, of the Antifreeze Leakage Defect and attempted to have the Chevrolet Cruze repaired through Spurr Chevrolet at least twice with no success.

46.     On at least one occasion, Spurr Chevrolet attempted to repair the Antifreeze Leakage Defect.

47.     In February 2013, when Plaintiff first complained that an antifreeze smell was coming into the cabin, Spurr Chevrolet, acting as agent, representative and/or ostensible agent of Defendant, assured her that the smell was related to air conditioning system and made a material omission of fact regarding the existence of the known and pervasive Antifreeze Leakage Defect.

48.     On March 26, 2014, Plaintiff again complained about the coolant smell to the service department at Spurr Chevrolet, as well as a potential oil leak, but it was not fixed and technicians only replaced a coolant hose and repaired a distinct part related to the hydraulic brakes that had also been recalled.

49.     On June 5, 2014, Plaintiff complained of a noise and "Service Engine Soon" or

SES light. Spurr's service department found a water leak and replaced the water pump, brakes and rotors.

50.     Plaintiff's 2011 Chevrolet Cruze continues to exhibit a malodorous smell when in operation, and especially when the heater is running.

51.     As a result of the Antifreeze Leakage Defect, Plaintiff Feliciano's use and enjoyment of his Chevrolet Cruze was constantly and substantially impaired.  Specifically, Plaintiff Feliciano had to endure the odor caused by the Antifreeze Leakage Defect and Plaintiff's Chevrolet Cruze significantly diminished in value because of the defect.

52.     Due to this Antifreeze Leakage Defect, Plaintiff Feliciano demanded rescission in a timely manner from Defendant.  Defendant refused to honor this demand.

53.     As a direct result of the Antifreeze Leakage Defect and General Motors' unwillingness or inability to fix it, Plaintiff has attempted to trade in her 2011 Chevrolet Cruze, but has been offered less than $5,000 for the car, which is a total loss of value since her January 2013 purchase of approximately $10,000.

54.     As a direct and proximate result of Defendant's conduct, Plaintiff Feliciano and the proposed Class are entitled to actual damages for the failure of consideration in connection with and/or difference in value arising out of the variance between Defendant's Chevrolet Cruze as warranted and Defendant's Chevrolet Cruze containing the defect; the depression of resale value of the Chevrolet Cruze suffered by Plaintiff Feliciano and the proposed Class arising out of the Antifreeze Leakage Defect; sufficient funds to permit Plaintiff Feliciano and the proposed Class to obtain effective repairs for each affected Chevrolet Cruze using proper parts and adequately trained labor; a refund of all monies paid out-of-pocket by Plaintiff Feliciano and the proposed Class as compensation for all out-of-pocket expenses that Plaintiff Feliciano and the

proposed Class have incurred as a result of being unable to use their Chevrolet Cruzes, including any and all alternative forms of transportation; and/or rescission of their contracts of sale and/or lease, as appropriate.

55.     Those in the proposed Class who no longer own their Chevrolet Cruzes are entitled to damages for the higher cost of ownership of their new vehicles, whether due to higher insurance premiums, worse gas mileage, or the depreciation or their new car.

## CLASS ALLEGATIONS

56.     Plaintiff adopts and incorporates by reference all the allegations contained in his original Complaint as though set forth in their entirety herein.

57.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

58.     The proposed Class is defined as follows:

> Any individual or entity that purchased or leased a model year 2011 or newer Chevrolet Cruze.

59.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether class certification is appropriate.

60.     Excluded from the Class are:

    i.   Defendant and any entities in which Defendant has a controlling interest;
    ii.  Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;
    iii. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;
    iv.  Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;
    v.   All persons or entities that properly execute and timely file a request for exclusion from the Class;
    vi.  Any attorneys representing the Plaintiff or the proposed Class; and

vii.   All governmental entities.

61.   <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>.  The proposed Class is comprised of over 100 people and possibly thousands of individuals who were Defendant's customers, the joinder of which in one action would be impracticable. Due to the nature of the trade and commerce involved, the members of the proposed Class are geographically dispersed throughout the United States and joinder of all the proposed Class members would be impracticable.  The exact number or identification of the proposed Class members is presently unknown.   The identity of the proposed Class members is ascertainable and can only be determined based on Defendant's records.

62.   <u>Typicality—Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiff asserts claims that are typical of the entire proposed Class.  The claims of the representative Plaintiff are typical of the claims of the proposed Class in that the representative Plaintiff, like all proposed Class members, is a victim of General Motors' unfair and deceptive trade practices in connection with the merchandising and sale of the Chevrolet Cruze.  The representative Plaintiff, like all proposed Class members, has been damaged by General Motors' misconduct through General Motors' unfair and deceptive trade practices in luring consumers to purchase a Chevrolet Cruze based on false promises and assurances.   The Chevrolet Cruze has a significant Antifreeze Leakage Defect, which has caused consumers to incur a substantial loss due to the rapid depreciation of the Chevrolet Cruze's value.   Additionally, consumers will continue to incur an unfair and unconscionable financial loss.  Furthermore, the factual basis of General Motors' misconduct is common to all proposed Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the proposed Class.

63.   There are numerous questions of law and fact common to the proposed Class and

those common questions predominate over any questions affecting only individual Class members.

64.   <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.   The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a.   Whether model year 2011 and newer Chevrolet Cruzes are manufactured with a latent Antifreeze Leakage Defect;

b.   Whether the presence of a latent Antifreeze Leakage Defect reduces the value of all model year 2011 and newer Chevrolet Cruzes;

c.   Whether General Motors had knowledge of the Antifreeze Leakage Defect;

d.   Whether General Motors concealed the Antifreeze Leakage Defect from consumer;

e.   Whether General Motors' affirmative misrepresentations and omissions regarding the reliability of its Chevrolet Cruzes were likely to deceive a reasonable person;

f.   Whether General Motors' vehicles were deceptively marketed, distributed, and sold;

g.   Whether General Motors breached its express warranties regarding the safety and quality of its Chevrolet Cruzes;

h.   Whether General Motors breached the implied warranty of merchantability because its Chevrolet Cruzes were not fit for their ordinary purpose due to their Antifreeze Leakage Defect;

i.      Whether Defendant violated the Magnuson-Moss Warranty Act;

j.      Whether, by the misconduct set forth herein, Defendant violated the common laws of negligent misrepresentation and unjust enrichment;

k.      Whether Plaintiff and proposed Class are entitled to damages, restitution, disgorgement, equitable relief, and/or other relief; and

l.      The amount and nature of such relief to be awarded to Plaintiff and the proposed Class.

65.     Other questions of law and fact common to the proposed Class include:

a.      The proper method or methods by which to measure damages; and

b.      The declaratory relief to which the proposed Class is entitled.

66.     Plaintiff's claims are typical of the claims of the proposed Class in that they arise out of the same wrongful policies and practices and the same or substantially similar unconscionable practices of General Motors. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

67.     Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1).   The Plaintiff is an adequate representative of the proposed Class because Plaintiff fits within the class definition and Plaintiff's interest does not conflict with the interests of the members of the proposed Class Plaintiff seeks to represent.   Plaintiff is committed to the vigorous prosecution of this action. Plaintiff is represented by experienced Class Counsel.   Class Counsel has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.   Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

68.     Superiority—Fed. R. Civ. P. 23(b)(3).   The class action is the best available

method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiff and members of the proposed Class have suffered irreparable harm as a result of Defendant's conduct.  Because of the size of each Class member's claims, no Class members could afford to seek legal redress for the wrongs identified in this Class Action Complaint.  Without the class action vehicle, the proposed Class would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the conduct that is the subject of this Class Action Complaint, and Defendant would be permitted to retain the proceeds of its violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

69.    Even if the proposed Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.   Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

<u>**COUNT I**</u>
**VIOLATION OF NEW YORK GEN. BUS. LAW § 349**

70.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

14

71.     New York General Business Law ("G.B.L.") § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

72.     Plaintiff is a consumer as defined by G.B.L. § 349.

73.     Defendant's sale of its product to Plaintiff and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of G.B.L. § 349.

74.     In the course of General Motors' business selling its products to consumers, it willfully failed to disclose and actively concealed the Antifreeze Leak Defect in Chevrolet Cruze vehicles as described above to Plaintiff and Class.

75.     Accordingly, General Motors made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts to Plaintiff and Class.

76.     General Motors engaged in a deceptive acts or practices when it failed to disclose material information to Plaintiff and Class concerning the Chevrolet Cruze which was known to General Motors at the time of the sale.

77.     General Motors deliberately withheld the information about the Chevrolet Cruze's propensity for antifreeze leaks resulting in obnoxious smells in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

78.     The propensity of the Chevy Cruze to have an Antifreeze Leak Defect was a material fact to Plaintiff and the Class.

79.     Had Plaintiff and the Class known that the Chevrolet Cruze  had this serious defect, they would not have purchased the Chevrolet Cruze.

80.     Plaintiff and the Class suffered injury caused by General Motors' affirmative statements, as well as their failure to disclose material information.

81.     Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of their bargain.

82.     The value of their Chevrolet Cruze vehicles have diminished now that the Antifreeze Leak Defect has come to light, and Plaintiff and the Class own vehicles that are not of good quality.

83.     Pursuant to G.B.L. § 349, Plaintiff is entitled to recover the greater of actual damages or $50. Because General Motors acted willfully or knowingly as described herein, Plaintiff and the Class are entitled to recover three times actual damages, up to $1,000.

## COUNT II
## FALSE ADVERTISING
## (N.Y. GEN. BUS. LAW § 350)

84.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

85.     New York G.B.L. § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce...." False advertising includes "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of ... representations [made] with respect to the commodity...." N.Y. G.B.L. § 350-a.

86.     Plaintiff is a consumer as defined by G.B.L. § 350.

87.     Defendant's sale of its vehicles to Plaintiff and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of G.B.L. § 350.

88.     Defendant's advertisement and marketing of its vehicles to Plaintiff and the Class as described herein constitute the "false advertising in the conduct of any business, trade or commerce" within the meaning of NYS GBL 350.

89.     In its normal course of business in its dealings with consumers, Defendant caused to be made in, or disseminated through, New York: through advertising, marketing and other publications, Defendant made statements that were untrue or misleading, and which it knew (or which by the exercise of reasonable care should have known) to be untrue and misleading, to Plaintiff and consumers.

90.     Defendant has violated G.B.L. § 350 because the misrepresentations and omissions regarding the safety and reliability of its vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

91.     Plaintiff and the Class have suffered injury, including the loss of money or property, as a result of Defendant's false advertising.

92.     In purchasing or leasing their vehicles, the Plaintiff and the Class reasonably relied Defendant's advertising, and on the affirmative misrepresentations and/or omissions of General Motors with respect to the safety and reliability of the vehicles within that advertising.

93.     General Motors' affirmative representations turned out not to be true because the vehicles develop malodorous smells, lowering their true value.

94.     Had the Plaintiff and the Class known the truth regarding Defendant's vehicles, they would not have purchased or leased their Chevrolet Cruze vehicles and/or paid as much for them.

95.     Accordingly, the Plaintiff and the Class overpaid for their Chevrolet Cruze vehicles and did not receive the benefit of the bargain for their Chevrolet Cruze vehicles, which now have a lower true market value.

96.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices.

97.     Plaintiff and the Class are also entitled to recover their actual damages or $500 whichever is greater.

98.     Because General Motors acted willfully or knowingly, Plaintiff is entitled to recover three times actual damages, up to $10,000.

<u>COUNT III</u>
**BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. § 2-313)**

99.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

100.     General Motors is and was at all relevant times a merchant with respect to motor vehicles under N.Y. U.C.C. § 2-313.

101.     In the course of selling its vehicles, General Motors expressly warranted in writing that the Chevrolet Cruze vehicles were covered by certain warranties, including the Limited Warranty.

102.     General Motors breached the express warranty to repair and/or adjust to correct defects in materials and workmanship of any part supplied by General Motors. General Motors has not repaired or adjusted, and has been unable to repair or adjust, the Chevrolet Cruze vehicles' materials and workmanship defects.

103.     In addition to warranties such as the Limited Warranty, General Motors expressly warranted several attributes, characteristics and qualities of Chevrolet Cruze vehicles, as set forth above.

104.     These warranties are only a sampling of the numerous warranties that General Motors made relating to safety, reliability and operation, which are more fully outlined above. Generally these express warranties promise heightened, superior, and state-of-the-art safety,

reliability, performance standards, and promote the benefits of Chevrolet Cruze design. These warranties were made, inter alia, in advertisements, in General Motors' brochures, and in uniform statements provided by General Motors to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

105.    These additional warranties were also breached because the Chevrolet Cruze vehicles were not fully operational or reliable (and remained so even after the problems were acknowledged and a recall "fix" was announced), nor did they comply with the warranties expressly made to purchasers or lessees. General Motors did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

106.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the Class whole and because the Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

107.    Accordingly, recovery by the Plaintiff is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

108.    Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding its vehicles. Plaintiff and the Class were, therefore, induced to purchase the vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

109.    Moreover, many of the damages flowing from the Chevrolet Cruze vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' remedies would be insufficient to make Plaintiff whole.

110.    Finally, due to the Defendant's breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.Y. U.C.C. §§ 2-608 and 2-711.

111.    General Motors was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and its Chevy Cruz customers before or within a reasonable amount of time after General Motors issued the recall and the allegations of vehicle defects became public.

112.    As a direct and proximate result of General Motors' breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. § 2-314)**

113.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

114.    General Motors is and was at all relevant times a merchant with respect to motor

vehicles.

115.    Plaintiff and the Class as purchasers from Defendant had a successive relationship to the same rights of property in the vehicles and therefore after purchase are in in privity with Defendant.

116.    A warranty that the Chevrolet Cruze vehicles were in merchantable condition is implied by law in the instant transactions.

117.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

118.    Specifically, the Chevrolet Cruze vehicles are inherently defective in that there are defects in the antifreeze system that create obnoxious smells in the cabin compartment, and in that the antifreeze system was not adequately tested.

119.    General Motors was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the Class before or within a reasonable amount of time after General Motors issued the recall and the allegations of vehicle defects became public.

120.    As a direct and proximate result of General Motors' breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

### COUNT V
### REVOCATION OF ACCEPTANCE
### (N.Y. U.C.C. § 2-608)

121.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

122.    Plaintiff identified above demanded revocation and the demands were refused.

123.    Plaintiff and the Class had no knowledge of such defects and nonconformities,

were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their automobiles from General Motors.

124.    General Motors was aware of the defects and nonconformities at the time of sale and thereafter.

125.    Acceptance was reasonably induced by the difficulty of discovery of the defects and nonconformities before acceptance.

126.    There has been no change in the condition of Plaintiff's vehicles not caused by the defects and nonconformities.

127.    When Plaintiff sought to revoke acceptance, General Motors refused to accept return of the Chevrolet Cruze vehicle and to refund Plaintiff's purchase price and monies paid.

128.    Plaintiff and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.

129.    Because General Motors is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the Class have not re-accepted their Chevrolet Cruze vehicles by retaining them.

130.    These defects and nonconformities substantially impaired the value of the Chevrolet Cruze vehicles to Plaintiffs and the Class: this impairment stems from the fact that the repair and adjust warranty has failed of its essential purpose because General Motors cannot repair or adjust the Chevrolet Cruze vehicles.

131.    Plaintiff and the Class provided notice of their intent to seek revocation of acceptance by a class-action lawsuit seeking such relief.

132.    In addition, Plaintiff (and many Class members) has requested that General Motors accept return of their vehicles and return all payments made.

133.     Plaintiff, on her own behalf and for the putative Class, hereby demands revocation and tender their Chevrolet Cruze vehicles.

134.     Plaintiff and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because General Motors is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the Class have not re-accepted their Chevrolet Cruze vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

135.     Finally, due to the Defendant' breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

136.     Consequently, Plaintiff and the Class are entitled to revoke their acceptances, receive all payments made to General Motors, and to all incidental and consequential damages, including the costs associated with purchasing marketable or sellable vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY

137.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

138.     To the extent General Motors' repair or adjust commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiff pleads in the alternative under common law contract law. General Motors limited the remedies available to Plaintiff and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of

any part supplied by General Motors, and/or warranted the quality or nature of those services to Plaintiffs.

139.    General Motors breached this warranty or contract obligation by failing to repair the Chevrolet Cruze vehicles evidencing the Antifreeze Leak Defect, including those that were recalled, or to replace them.

140.    As a direct and proximate result of Defendant' breach of contract or common law warranty, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VII**
**UNJUST ENRICHMENT**

141.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

142.    General Motors had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiff and the Class.

143.    As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, General Motors charged a higher price for their vehicles than the vehicles' true value and General Motors obtained monies which rightfully belong to Plaintiffs.

144.    General Motors was thus enriched at the expense of Plaintiff, and it would be against equity and good conscience for General Motors to retain these wrongfully obtained profits.

145.    Plaintiff, therefore, is entitled to restitution and seek an order establishing General Motors as constructive trustees of the profits unjustly obtained, plus interest.

**COUNT VIII**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, et seq.)**

146.    Plaintiff incorporates by reference and re-alleges all paragraphs alleged herein.

147.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

148.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

149.    General Motors is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

150.    The Chevy Cruze vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

151.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

152.    General Motors' express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Chevy Cruze vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

153.    General Motors breached these warranties as described in more detail above, but generally by not repairing or adjusting the Chevy Cruze vehicles' materials and workmanship defects; providing Chevy Cruze vehicles which are not in merchantable condition, exhibit the Antifreeze Leak Defect, and are not fit for the ordinary purpose for which vehicles are used; providing Vehicles that were not fully operational or reliable; and not curing defects and nonconformities once they were identified.

154.    Plaintiff and Class members have had sufficient direct dealings with either the

Defendant or their agents (dealerships) to establish privity of contract between Plaintiff and the Class members. Notwithstanding this, privity is not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between General Motors and its dealers; specifically, they are the intended beneficiaries of General Motors' implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Chevy Cruze vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

155.    Plaintiff has engaged in each of General Motors' three steps to customer satisfaction without their concerns being resolved. Plaintiff Feliciano has contacted her dealership to discuss the situation with the dealership customer relations manager, without adequate resolution.

156.    Even if this were not the case, requiring an informal dispute settlement procedure, or affording General Motors a reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile. At the time of sale or lease of each Chevy Cruze vehicle, General Motors knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Chevy Cruze vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resort to an informal dispute resolution procedure and/or afford General Motors a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

157.    Plaintiff and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because General Motors is

refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the Class have not re-accepted their Chevy Cruze vehicles by retaining them.

158.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

159.     Plaintiff seeks to revoke their acceptance of the Chevy Cruze vehicles, or, in the alternative, seek all damages, including diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT IX
## COMMON LAW FRAUD

160.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

161.     General Motors had knowledge of the quality and safety defects in its vehicles, which it failed to disclose to Plaintiff and the Class.

162.     Defendant hid the true nature of the quality and safety of its vehicles because to fix the known defect would cost more than settling claims of the purchaser's of the defective Chevy Cruze.

163.     Defendant knew that some purchasers would not bring suit, saving Defendant the costs of engineering a fix, recalling the defective vehicles and repairing them.

164.     As a result of its wrongful and fraudulent acts, affirmative misrepresentations and omissions, as set forth with particularity above, pertaining to the design defect of their vehicles and the concealment of the defect, General Motors charged a higher price for their vehicles than the vehicles' true value and General Motors obtained monies which rightfully belong to Plaintiffs.

165.    Defendant also saved money it would have to spend to repair these defects.

166.    Defendant knowingly made affirmative misstatements to purchasers as alleged with particularity *supra*.

167.    Defendant intentionally concealed and failed to disclose the true facts about its vehicles for the purpose of inducing Plaintiff and the Class to purchase and continue to purchase the Chevy Cruze.

168.    General Motors, by its fraudulent acts, was thus wrongfully enriched at the expense of Plaintiff.

169.    Plaintiff, therefore, is entitled to restitution and seeks an order establishing General Motors as constructive trustees of the profits unjustly obtained, plus interest.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and on behalf of the Class prays:

A.    For an order certifying this action as a class action, appointing Plaintiff as representative of the Classes and appointing her attorney as counsel for the Class;

B.    For Defendant to pay lease and car loan payments until General Motors repairs or replaces the parts involved in the Antifreeze Leak Defect for Chevrolet Cruze vehicles;

C.    For all compensatory and other appropriate damages on all applicable claims in an amount to be proven at trial, including the diminution in value of Chevrolet Cruze vehicles as a result of the acts complained of herein;

D.    For an award of Plaintiff and the Class damages as provided in New York's General Business Law;

E.      For an order permanently enjoining Defendant from engaging in the unlawful

practices alleged herein;

F.      For all equitable remedies available;

G.      For an award of attorneys' fees, costs and expenses;

H.      For an award of pre- and post-judgment interest;

I.      For punitive damages; and

J.      For such other and further relief that the Court deems appropriate and just under

the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all

issues so triable.

Dated: August 11, 2014
Manhasset, New York

                                    **LAW OFFICES OF PAUL C. WHALEN, P.C.**

                                    By: _____
                                    Paul C. Whalen (PW 1300)
                                    768 Plandome Road
                                    Manhasset, NY 11030
                                    pcwhalen@gmail.com
                                    Telephone: (516) 627-5610

                                    *Attorney for Plaintiff*