## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHEILAH FELICIANO and LESLIE WILBANKS, on their own behalf and on behalf of all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS COMPANY,<br><br>Defendant. | Case No.  1:14-cv-06374-AT<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

1.      Plaintiffs, Sheilah Feliciano and Leslie Wilbanks ("Plaintiffs"), individually and on behalf of all others similarly situated, allege for their First Amended Class Action Complaint against Defendant General Motors Company ("Defendant" or "General Motors") as follows:

### INTRODUCTION

2.      This is a class action seeking monetary damages, restitution, and declaratory relief from General Motors, notably arising from its practice of engaging in unfair and deceptive trade practices in connection with the merchandising and sale of the motor vehicle branded the Chevrolet Cruze.

3.      Since 2010, General Motors, a car manufacturer, has sold hundreds of thousands of vehicles under the Chevrolet Cruze brand name throughout the United States.

4.      The Chevrolet Cruze models use antifreeze in order to protect various mechanical components by keeping the water in the car's radiator and engine from freezing in cold temperatures and boiling in hot temperatures.  It also is used to lubricate the moving parts it

1

comes in contact with.   General Motors promised and/or warranted in its advertising and marketing of the Chevrolet Cruze to potential buyers that it would operate safely and reliably. This promise turned out to be false in several material respects.

5.      In reality, the Chevrolet Cruze has a serious mechanical defect that causes antifreeze to leak from the radiator (hereinafter referred to as the "Antifreeze Leakage Defect"). The Antifreeze Leakage Defect can lead to mechanical troubles and/or can cause a malodorous smell in the passenger compartment.  General Motors concealed and did not fix the Antifreeze Leakage Defect plaguing all 2011 or newer Chevrolet Cruze models.

6.      The Chevrolet Cruze has an Antifreeze Leakage Defect where antifreeze fumes emanate into the passenger compartment, causing a noxious smell.

7.      In press releases, sales literature, brochures, advertisements, and other consumer documents, General Motors has consistently promoted the Chevrolet Cruze as being "safe," "reliable," and, in essence, "more for your money."

8.      On Defendant's 2012 product page, it stated:

Cruze proved itself in some hostile environments: continuous driving in the heat of the Arabian Desert, high altitude in the Alps, intense moisture in Thailand, and more. Then it was put through its paces on some of the best test tracks in the world, including the famed Nürburgring in Germany, a beastly track and proving grounds generally reserved for high-performance or track-ready vehicles.

Cruze is one of the most tested vehicles in Chevrolet history….

9.      Even today, Defendant touts the benefits and safety: "Cruze goes beyond your typical compact car. Its modern styling on the exterior hints at the ground-breaking vehicle inside — one so efficient, so safe and so technologically advanced, it redefines the category."

10.      Yet almost immediately, there were problems, and on May 9, 2012 on the car forum CruzeTalk.com, user "cruze 2011" posted:

well after owning my 2011 cruze since december 2011 and 22000 miles its been back to the dealer several times for the coolant issue and today after the dealer ship told me there is no fix until chevy comes up with one i called chevrolet customer assistance idont think its right i have to continue to drive this car with the coolant smell in it the dealer has put die in it at lease 2 times and found nothing is leaking. has anybody had their cars fixed yet with this issue? [*sic*]

11.     General Motors, through its agents, markets and promotes the Cruze as a better and cheaper alternative to other, more popular vehicles manufactured by its competitors, including Honda Motor Company and Volkswagen.

12.     General Motors received reports of antifreeze related complaints that placed General Motors on notice of the serious design and mechanical defects presented by the Antifreeze Leakage Defect.  Indeed, General Motors has issued at least two Service Bulletins intended to correct the Antifreeze Leakage Defect.

13.     On information and belief, the number of complaints may prove to be much greater once the complaints known only to General Motors are analyzed.

14.     Because of the Antifreeze Leakage Defect, the Chevrolet Cruze diminishes in value at a faster rate than it would without the Antifreeze Leakage Defect.  Plaintiffs and the proposed Class would not have purchased the Chevrolet Cruze if they knew of the Antifreeze Leakage Defect.  Alternatively, had they known of the Antifreeze Leakage Defect, Plaintiffs and the proposed Class would not have paid as much for the Chevrolet Cruze.

15.     Despite General Motors notice of the Antifreeze Leakage Defect in Chevrolet Cruzes, General Motors did not disclose to consumers that Chevrolet Cruzes—which General Motors for years had advertised and/or warranted as "safe" and "reliable" – were in fact not as safe or reliable as a reasonable consumer expected due to the Antifreeze Leakage Defect.  Rather than disclose the truth, General Motors concealed the existence of the Antifreeze Leakage Defect and promised consumers that any known defects had been corrected.

16.     Consumers have complained about the Antifreeze Leakage Defect online at various consumer complaint websites. *See, e.g.*:

- http://www.aboutautomobile.com/Complaint/2012/Chevrolet/Cruze/Engine+and+Engine+Cooling+System;

- http://www.aboutautomobile.com/Complaint/2011/Chevrolet/Cruze/Engine+and+;Engine+Cooling+System;

- http://www.faqs.org/car/chevrolet-cruze-engine-and-engine-cooling/.

(All links, last visited on October 6, 2014.)

17.     The Antifreeze Defect was also the subject of a number news features:

- https://www.youtube.com/watch?v=t8uxX4SQnoQ  (WPXI-TV  Channel 11 news feature, last visited October 6, 2014);

- https://www.youtube.com/watch?v=w4eu6uVgimM (WSBTV  Channel 2 news feature, last visited October 6, 2014).

18.     Despite years of warnings, General Motors has failed to properly disclose, explain, or fix the defects of the Chevrolet Cruze. This leaves thousands, if not all, of Chevrolet Cruze owners with vehicles that have an Antifreeze Leakage Defect causing malodorous noxious and poisonous fumes to emanate in the passenger compartment that makes the vehicle unusable, constant maintenance when a vehicle is used, and other mechanical problems, all resulting in severe economic harm to the Chevrolet Cruze owners.

19.     The Chevrolet Cruze's Antifreeze Leakage Defect is preventable. For example, other cars in the same class of cars as the Chevrolet Cruze do not have the same Antifreeze Leakage Defect.  Furthermore, General Motors has successfully produced cars that do not have an Antifreeze Leakage Defect.

20.     When owners of the Chevrolet Cruze became aware of the Antifreeze Leakage Defect and notified General Motors of the problem through one of its agents, General Motors still did not correct the Antifreeze Leakage Defect.  Once owners of the Chevrolet Cruze began complaining on complaint boards on websites and other public fora, the public realized that General Motors had not corrected the Antifreeze Leakage Defect, the value of Chevrolet Cruze cars significantly diminished.

21.     General Motors has been unable or unwilling to provide an adequate repair.

22.      Because General Motors cannot or will not provide an adequate repair, the Antifreeze Leakage Defect harms every owner of a Chevrolet Cruze because it directly affects the operation, safety, and the individual value of every Chevrolet Cruze in the marketplace.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant.  See 28 U.S.C.  § 1332(d)(2)(A).  This Court also has personal jurisdiction over Defendant because it is authorized to do business and in fact does business in this state and District and Defendant has sufficient minimum contacts with this state and District, and / or otherwise intentionally avails itself of the markets in this state and District through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District under 28 U.S.C. § 1391.  Defendant does substantial business in the State of New York and within this District, advertises in this District,

receives substantial compensation and profits from the sales of its automobiles and other goods and services in this District, listed its stock on the NYSE, and has breached contracts and warranties in this District so as to subject it to *in personam* jurisdiction in this District.

## THE PARTIES

25.     Plaintiff, Sheilah Feliciano ("Plaintiff Feliciano"), is a resident and citizen of the State of New York.

26.     Plaintiff, Leslie Wilbanks ("Plaintiff Wilbanks"), is a resident and citizen of the State of Michigan.

27.     Plaintiffs bring this action in Plaintiffs' own right and on behalf of all others similarly situated.  Plaintiffs have incurred financial losses as a result of their purchase of the Chevrolet Cruze model.

28.     Defendant, General Motors, is a Delaware Corporation with its principal place of business in Detroit, Michigan and lists its stock on the NYSE.

29.     General Motors designs, manufactures, markets, distributes, and sells Chevrolet Cruzes in New York and throughout the United States.

30.     General Motors distributes Chevrolet Cruzes and sells these Chevrolet Cruzes through its network of dealers.

31.     Money received from the purchase of a General Motors vehicle from a dealer flows from the dealer to General Motors.

32.     Money received by the dealer from a purchaser can be directly traced to General Motors.

## FACTUAL BACKGROUND

33.     General Motors began selling the Chevrolet Cruze in the United States in 2010. The Chevrolet Cruze is four-door, five-passenger sedan.

34.     The Chevrolet Cruze requires antifreeze to ensure that the mechanical components of the vehicle run properly. However, as described above, the Chevrolet Cruze has an Antifreeze Leakage Defect (the "Defect").

35.     General Motors has a three (3) year/36,000 express warranty that covers the defect at issue.

36.     The sale of the vehicle and the warranty create privity between Defendant and individual consumers who purchased the Chevrolet Cruze, like Plaintiffs and the proposed Class Members, by, among other things, making its express warranty directly to and for the benefit of Plaintiffs and the proposed Class, and making its warranty part of the basis of the bargain and inducement to purchase its product.

37.     General Motors' express written warranty does not disclaim the implied warranty of merchantability.

38.     Despite this express warranty, Defendant has known for years of the Antifreeze Leakage Defect and the bad and poisonous smell associated with the leak.

39.     A multitude of customers, including Plaintiffs and other proposed Class Members, have complained and submitted their Chevrolet Cruzes for repair work related to this Antifreeze Leakage Defect.

40.     The Antifreeze Leakage Defect is a systemic design, materials, and/or workmanship defect and not merely a manufacturing peculiarity of a select number of Defendant's Chevrolet Cruzes.

41.     The Antifreeze Leakage Defect has, does, or will affect all members of the proposed Class, including Plaintiff Feliciano.

**THE DEFECT IN PLAINTIFF FELICIANO'S CHEVROLET CRUZE**

42.     On or about January 8, 2013, Plaintiff Feliciano purchased a 2011 Chevrolet Cruze for approximately $14,265.60, plus a $11,121.60 finance charge, from Spurr Chevrolet Buick Pontiac General Motors Company ("Spurr Chevrolet") in Brockport, New York, bearing the Vehicle Identification Number 1G1PF5S93B7267691.

43.     Plaintiff Feliciano is a consumer and purchased the Chevrolet Cruze primarily for personal use.

44.     Plaintiff Feliciano purchased the Chevrolet Cruze because of familiarity with General Motors' brand and representations of quality through years of General Motors' television and print advertisements.

45.     Plaintiff Feliciano's purchase of a 2011 Chevrolet Cruze from Spurr Chevrolet included a limited warranty.  The limited warranty provided that cars with "36,000 miles, but less than 80,000 miles, coverage will apply for sixty (60) days after delivery or three thousand (3,000) miles[.]" At the time of purchase, the 2011 Chevrolet Cruze's odometer read 54,413 miles.

46.     In February of 2013, within the warranty period, Plaintiff Feliciano's Chevrolet Cruze began exhibiting the Antifreeze Leakage Defect.

47.     Plaintiff Feliciano notified General Motors through its agent, Spurr Chevrolet, of the Antifreeze Leakage Defect and attempted to have the Chevrolet Cruze repaired through Spurr Chevrolet at least twice with no success.

48.     On at least one occasion, Spurr Chevrolet attempted to repair the Antifreeze

Leakage Defect.

49.     In February 2013, when Plaintiff Feliciano first complained that an antifreeze smell was coming into the cabin, Spurr Chevrolet, acting as agent, representative and/or ostensible agent of Defendant, assured her that the smell was related to air conditioning system and made a material omission of fact regarding the existence of the known and pervasive Antifreeze Leakage Defect.

50.     On March 26, 2014, Plaintiff Feliciano again complained about the coolant smell to the service department at Spurr Chevrolet, as well as a potential oil leak, but it was not fixed and technicians only replaced a coolant hose and repaired a distinct part related to the hydraulic brakes that had also been recalled.

51.     On June 5, 2014, Plaintiff Feliciano complained of a noise and "Service Engine Soon" or SES light. Spurr's service department found a water leak and replaced the water pump, brakes and rotors.

52.     Plaintiff Feliciano's 2011 Chevrolet Cruze continues to exhibit a malodorous smell when in operation, and especially when the heater is running.

53.     As a result of the Antifreeze Leakage Defect, Plaintiff Feliciano's use and enjoyment of his Chevrolet Cruze was constantly and substantially impaired.  Specifically, Plaintiff Feliciano had to endure the odor caused by the Antifreeze Leakage Defect and Plaintiff's Chevrolet Cruze significantly diminished in value because of the defect.

54.     Due to this Antifreeze Leakage Defect, Plaintiff Feliciano demanded rescission in a timely manner from Defendant.  Defendant refused to honor this demand.

55.     As a direct result of the Antifreeze Leakage Defect and General Motors' unwillingness or inability to fix it, Plaintiff has attempted to trade in her 2011 Chevrolet Cruze,

but has been offered less than $5,000 for the car, which is a total loss of value since her January 2013 purchase of approximately $10,000.

### THE DEFECT IN PLAINTIFF WILBANKS' CHEVROLET CRUZE

56.     On or about February 2012, Plaintiff Wilbanks purchased a new 2012 Chevrolet Cruze from Matthews Hargreaves Chevrolet, 2000 E. 12 Mile Rd., Royal Oak, MI 48067.

57.     Plaintiff Wilbanks purchased the Chevrolet Cruze because of familiarity with General Motors' brand and representations of quality through years of General Motors' television and print advertisements.

58.     Plaintiff Wilbanks' Chevrolet Cruze came with a three (3) year/36,000 warranty and the powertrain warranty for 100,000 miles or five (5) years.  Plaintiff Wilbanks Chevrolet Cruze now has 37,000 miles at the time of filing this Amended Complaint and is no longer under GM's 36,000 mile warranty.

59.     On numerous occasions while the vehicle was under GM's 36,000 mile warranty, Plaintiff Wilbanks brought her Chevrolet Cruze to Matthews Hargreaves Chevrolet and complained of the noxious smell coming into the passenger cabin.

60.     In particular, Plaintiff Wilbanks told the Matthews Hargreaves dealership that the malodorous emission/smell from the engine/radiator was so bad that a film developed on the inside of all the windows and she had to clean the windows once a month to remove this film. She also informed them that the smell was particularly bad when she had to use the heat during winter months.

61.     Plaintiff Wilbanks also found a sticky, clearish sludge at the top of her pedals underneath the dashboard in her 2012 Chevrolet Cruze.  The sludge smells like antifreeze fluid.

62.     To date, GM has not fixed the Defect, the malodorous smell is still present in her

2012 Chevrolet Cruze, and she still has to clean the inside windows of her vehicle once a month. In fact, the Matthews Hargreaves dealership has denied that the Defect or that the malodorous emission problem even exists in her 2012 Chevrolet Cruze.

63.     Nevertheless, in the last month from the filing of this Amended Complaint, Plaintiff Wilbanks tried to trade in her 2012 Chevrolet Cruze to the Matthews Hargreaves dealership, and they only offered her $5000 for the vehicle even though the Kelley Blue Book value of the car is: $12,000.00.

64.     Plaintiff Wilbanks 2012 Chevrolet Cruze was also recalled for a defective vacuum pump. But when Plaintiff Wilbanks brought her 2012 Chevrolet Cruze to the Matthews Hargreaves dealership, they were unable to fix it because they did not have the parts in to replace the recalled vacuum pump.

65.     Furthermore, Plaintiff Wilbanks' 2012 Chevrolet Cruze was recalled for a defective airbag.  Defendant recalled her 2012 Chevrolet Cruze because the driver side frontal air bag has a shorting bar, which may intermittently contact the air bag terminals.  If the bar and terminals are contacting each other at the time of a crash necessitating deployment of the driver's frontal airbag, that airbag will not deploy, increasing the driver's risk of injury ("airbag defect"). Because of this airbag defect, the value of Plaintiff Wilbanks' 2012 Chevrolet Cruze has been diminished.

66.     In deciding to purchase her 2012 Chevrolet Cruze, Plaintiff Wilbanks relied on Defendant's representations that the 2012 Chevrolet Cruze was safe and reliable.

67.     Plaintiff Wilbanks still owes $12,000 on her 2012 Chevrolet Cruze.

68.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class are entitled to actual damages for the failure of consideration in connection with

and/or difference in value arising out of the variance between Defendant's Chevrolet Cruze as warranted and Defendant's Chevrolet Cruze containing the defect; the depression of resale value of the Chevrolet Cruze models suffered by Plaintiffs and the proposed Class arising out of the Antifreeze Leakage Defect; sufficient funds to permit Plaintiffs and the proposed Class to obtain effective repairs for each affected Chevrolet Cruze using proper parts and adequately trained labor; a refund of all monies paid out-of-pocket by Plaintiffs and the proposed Class as compensation for all out-of-pocket expenses that Plaintiffs and the proposed Class have incurred as a result of being unable to use their Chevrolet Cruze models, including any and all alternative forms of transportation; and/or rescission of their contracts of sale and/or lease, as appropriate.

69.     Those in the proposed Class who no longer own their Chevrolet Cruze models are entitled to damages for the higher cost of ownership of their new vehicles, whether due to higher insurance premiums, worse gas mileage, or the depreciation or their new car.

## CLASS ALLEGATIONS

70.     Plaintiffs adopt and incorporate by reference all the allegations contained in their First Amended Complaint as though set forth in their entirety herein.

71.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

72.     The proposed Class is defined as follows:

> Any individual or entity that purchased or leased a model year 2011 or newer Chevrolet Cruze vehicle.

73.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether class certification is appropriate.

74.     Excluded from the Class are:

     i.   Defendant and any entities in which Defendant has a controlling interest;

    ii.   Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

   iii.   The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

   iv.   Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;

    v.   All persons or entities that properly execute and timely file a request for exclusion from the Class;

   vi.   Any attorneys representing the Plaintiffs or the proposed Class; and

  vii.   All governmental entities.

75.  **Numerosity—Fed. R. Civ. P. 23(a)(1)**.  The proposed Class is comprised of over 100 people and possibly thousands of individuals who were Defendant's customers, the joinder of which in one action would be impracticable. Due to the nature of the trade and commerce involved, the members of the proposed Class are geographically dispersed throughout the United States and joinder of all the proposed Class members would be impracticable.  The exact number or identification of the proposed Class members is presently unknown.  The identity of the proposed Class members is ascertainable and can only be determined based on Defendant's records.

76.  **Typicality—Fed. R. Civ. P. 23(a)(3)**.  Plaintiffs assert claims that are typical of the entire proposed Class.  The claims of the representative Plaintiffs are typical of the claims of the proposed Class in that the representative Plaintiffs, like all proposed Class members, are victims of General Motors' unfair and deceptive trade practices in connection with the merchandising and sale of the Chevrolet Cruze.  The representative Plaintiffs, like all proposed Class members, have been damaged by General Motors' misconduct through General Motors' unfair and deceptive trade practices in luring consumers to purchase a Chevrolet Cruze based on false promises and assurances.  The Chevrolet Cruze has a significant Antifreeze Leakage

Defect, which has caused consumers to incur a substantial loss due to the rapid depreciation of the Chevrolet Cruze's value. Additionally, consumers will continue to incur an unfair and unconscionable financial loss. Furthermore, the factual basis of General Motors' misconduct is common to all proposed Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the proposed Class.

77.     There are numerous questions of law and fact common to the proposed Class and those common questions predominate over any questions affecting only individual Class members.

78.     <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

> a.     Whether model year 2011 and newer Chevrolet Cruzes are manufactured with a latent Antifreeze Leakage Defect;
>
> b.     Whether model year 2011 and newer Chevrolet Cruzes are manufactured with an airbag defect;
>
> c.     Whether the presence of a latent Antifreeze Leakage Defect reduces the value of all model year 2011 and newer Chevrolet Cruzes;
>
> d.     Whether the presence of a latent airbag defect reduces the value of all model year 2011 and newer Chevrolet Cruzes;
>
> c.     Whether General Motors had knowledge of the Antifreeze Leakage Defect;
>
> d.     Whether General Motors concealed the Antifreeze Leakage Defect from consumers;

14

e.  Whether General Motors' affirmative misrepresentations and omissions regarding the reliability of its Chevrolet Cruzes were likely to deceive a reasonable person;

f.  Whether General Motors' vehicles were deceptively marketed, distributed, and sold;

g.  Whether General Motors breached its express warranties regarding the safety and quality of its Chevrolet Cruzes;

h.  Whether General Motors breached the implied warranty of merchantability because its Chevrolet Cruzes were not fit for their ordinary purpose due to their Antifreeze Leakage Defect;

i.  Whether Defendant violated the Magnuson-Moss Warranty Act;

j.  Whether, by the misconduct set forth herein, Defendant violated the common laws of negligent misrepresentation and unjust enrichment;

k.  Whether Plaintiffs and proposed Class are entitled to damages, restitution, disgorgement, equitable relief, and/or other relief; and

l.  The amount and nature of such relief to be awarded to Plaintiffs and the proposed Class.

79.  Other questions of law and fact common to the proposed Class include:

a.  The proper method or methods by which to measure damages; and

b.  The declaratory relief to which the proposed Class is entitled.

80.  Plaintiffs' claims are typical of the claims of the proposed Class in that they arise out of the same wrongful policies and practices and the same or substantially similar unconscionable practices of General Motors. Plaintiffs have suffered the harm alleged and have

no interests antagonistic to the interests of any other Class member.

81.   <u>Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.   The Plaintiffs are adequate representatives of the proposed Class because Plaintiffs fit within the class definition and Plaintiffs' interests do not conflict with the interests of the members of the proposed Class Plaintiffs seek to represent.   Plaintiffs are committed to the vigorous prosecution of this action. Plaintiffs are represented by experienced Class Counsel.   Class Counsel has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.   Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

82.   <u>Superiority—Fed. R. Civ. P. 23(b)(3)</u>.   The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.   Plaintiffs and members of the proposed Class have suffered irreparable harm as a result of Defendant's conduct.   Because of the size of each Class member's claims, no Class members could afford to seek legal redress for the wrongs identified in this First Amended Class Action Complaint.   Without the class action vehicle, the proposed Class would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the conduct that is the subject of this First Amended Class Action Complaint, and Defendant would be permitted to retain the proceeds of its violations of law.   Further, individual litigation has the potential to result in inconsistent or contradictory judgments.   A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

83.   Even if the proposed Class members themselves could afford such individual

litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.   Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

<u>**COUNT I**</u>
**VIOLATION OF NEW YORK GEN. BUS. LAW § 349**

84.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as thought fully set forth herein.

85.    New York General Business Law ("G.B.L.") § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

86.    Plaintiffs are consumers as defined by G.B.L. § 349.

87.    Defendant's sale of its product to Plaintiff Feliciano and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of G.B.L. § 349.

88.    In the course of General Motors' business selling its products to consumers, it willfully failed to disclose and actively concealed the Antifreeze Leakage Defect in Chevrolet Cruze vehicles as described above to Plaintiffs and Class.

89.    Accordingly, General Motors made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts to Plaintiffs and Class.

90.    General Motors engaged in a deceptive acts or practices when it failed to disclose material information to Plaintiffs and Class concerning the Chevrolet Cruze which was known to

General Motors at the time of the sale.

91.     General Motors deliberately withheld the information about the Chevrolet Cruze's propensity for antifreeze leaks resulting in obnoxious smells in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

92.     The propensity of the Chevrolet Cruze to have an Antifreeze Leakage Defect was a material fact to Plaintiffs and the Class.

93.     Had Plaintiffs and the Class known that the Chevrolet Cruze had this serious defect, they would not have purchased the Chevrolet Cruze.

94.     Plaintiffs and the Class suffered injury caused by General Motors' affirmative statements, as well as their failure to disclose material information.

95.     Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain.

96.     The value of their Chevrolet Cruze vehicles have diminished now that the Antifreeze Leakage Defect has come to light, and Plaintiffs and the Class own vehicles that are not of good quality.

97.     Pursuant to G.B.L. § 349, Plaintiffs are entitled to recover the greater of actual damages or $50. Because General Motors acted willfully or knowingly as described herein, Plaintiffs and the Class are entitled to recover three times actual damages, up to $1,000.

## COUNT II
## FALSE ADVERTISING
## (N.Y. GEN. BUS. LAW § 350)

98.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

99.     New York G.B.L. § 350 makes unlawful "[f]alse advertising in the conduct of any

business, trade or commerce.…" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity.…" N.Y. G.B.L. § 350-a.

100.     Plaintiff Feliciano is a consumer as defined by G.B.L. § 350.

101.     Defendant's sale of its vehicles to Plaintiffs and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of G.B.L. § 350.

102.     Defendant's advertisement and marketing of its vehicles to Plaintiffs and the Class as described herein constitute the "false advertising in the conduct of any business, trade or commerce" within the meaning of NYS GBL 350.

103.     In its normal course of business in its dealings with consumers, Defendant caused to be made in, or disseminated through, New York: through advertising, marketing and other publications, Defendant made statements that were untrue or misleading, and which it knew(or which by the exercise of reasonable care should have known) to be untrue and misleading, to Plaintiffs and consumers.

104.     Defendant has violated G.B.L. § 350 because the misrepresentations and omissions regarding the safety and reliability of its vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

105.     Plaintiffs and the Class have suffered injury, including the loss of money or property, as a result of Defendant's false advertising.

106.     In purchasing or leasing their vehicles, the Plaintiffs and the Class reasonably relied Defendant's advertising, and on the affirmative misrepresentations and/or omissions of General Motors with respect to the safety and reliability of the vehicles within that advertising.

107.     General Motors' affirmative representations turned out not to be true because the vehicles develop malodorous smells, lowering their true value.

108.     Had the Plaintiffs and the Class known the truth regarding Defendant's vehicles, they would not have purchased or leased their Chevrolet Cruze vehicles and/or paid as much for them.

109.     Accordingly, the Plaintiffs and the Class overpaid for their Chevrolet Cruze vehicles and did not receive the benefit of the bargain for their Chevrolet Cruze vehicles, which now have a lower true market value.

110.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices.

111.     Plaintiffs and the Class are also entitled to recover their actual damages or $500 whichever is greater.

112.     Because General Motors acted willfully or knowingly, Plaintiffs are entitled to recover three times actual damages, up to $10,000.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. § 2-313, Mich. Stat. § 440.2313)**

113.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

114.     General Motors is and was at all relevant times a merchant with respect to motor vehicles under N.Y. U.C.C. § 2-313 and Mich. Stat. § 440.2313.

115.     In the course of selling its vehicles, General Motors expressly warranted in writing that the Chevrolet Cruze vehicles were covered by certain warranties, including the Limited Warranty.

116.    General Motors breached the express warranty to repair and/or adjust to correct defects in materials and workmanship of any part supplied by General Motors. General Motors has not repaired or adjusted, and has been unable to repair or adjust, the Chevrolet Cruze vehicles' materials and workmanship defects.

117.    In addition to warranties such as the Limited Warranty, General Motors expressly warranted several attributes, characteristics and qualities of Chevrolet Cruze vehicles, as set forth above.

118.    These warranties are only a sampling of the numerous warranties that General Motors made relating to safety, reliability and operation, which are more fully outlined above. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of Chevrolet Cruze design. These warranties were made, inter alia, in advertisements, in General Motors' brochures, and in uniform statements provided by General Motors to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

119.    These additional warranties were also breached because the Chevrolet Cruze vehicles were not fully operational or reliable (and remained so even after the problems were acknowledged and a recall "fix" was announced), nor did they comply with the warranties expressly made to purchasers or lessees. General Motors did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

120.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the Class whole and because the Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

121.    Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

122.    Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding its vehicles. Plaintiffs and the Class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

123.    Moreover, many of the damages flowing from the Chevrolet Cruze vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' remedies would be insufficient to make Plaintiffs whole.

124.    Finally, due to the Defendant's breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.Y. U.C.C. §§ 2-608 and 2-711.

125.    General Motors was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and

communications sent by Plaintiffs and its Chevrolet Cruze customers before or within a reasonable amount of time after General Motors issued the recall and the allegations of vehicle defects became public.

126.    As a direct and proximate result of General Motors' breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. § 2-314, Mich. Stat. § 440.2314)**

127.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

128.    General Motors is and was at all relevant times a merchant with respect to motor vehicles.

129.    Plaintiffs and the Class as purchasers from Defendant had a successive relationship to the same rights of property in the vehicles and therefore after purchase are in privity with Defendant.

130.    In the instant transactions, a warranty that the Chevrolet Cruze vehicles were in merchantable condition is implied by law.

131.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

132.    Specifically, the Chevrolet Cruze vehicles are inherently defective in that there are defects in the antifreeze system that create obnoxious smells in the cabin compartment, and in that the antifreeze system was not adequately tested.

133.    General Motors was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and

communications sent by Plaintiffs and the Class before or within a reasonable amount of time after General Motors issued the recall and the allegations of vehicle defects became public.

134.    As a direct and proximate result of General Motors' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**COUNT V**
**REVOCATION OF ACCEPTANCE**
**(N.Y. U.C.C. § 2-608)**

135.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

136.    Plaintiffs identified above demanded revocation and the demands were refused.

137.    Plaintiffs and the Class had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their automobiles from General Motors.

138.    General Motors was aware of the defects and nonconformities at the time of sale and thereafter.

139.    Acceptance was reasonably induced by the difficulty of discovery of the defects and nonconformities before acceptance.

140.    There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

141.    When Plaintiffs sought to revoke acceptance, General Motors refused to accept return of the Chevrolet Cruze vehicles and to refund Plaintiffs' purchase price and monies paid.

142.    Plaintiffs and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.

143.    Because General Motors is refusing to acknowledge any revocation of acceptance

and return immediately any payments made, Plaintiffs and the Class have not re-accepted their Chevrolet Cruze vehicles by retaining them.

144.    These defects and nonconformities substantially impaired the value of the Chevrolet Cruze vehicles to Plaintiffs and the Class: this impairment stems from the fact that the repair and adjust warranty has failed of its essential purpose because General Motors cannot repair or adjust the Chevrolet Cruze vehicles.

145.    Plaintiffs and the Class provided notice of their intent to seek revocation of acceptance by a class-action lawsuit seeking such relief.

146.    In addition, Plaintiffs (and many Class members) have requested that General Motors accept return of their vehicles and return all payments made.

147.    Plaintiffs, on their own behalf and for the putative Class, hereby demand revocation and tender their Chevrolet Cruze vehicles.

148.    Plaintiffs and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because General Motors is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Class have not re-accepted their Chevrolet Cruze vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

149.    Finally, due to the Defendant' breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned.

150.    Consequently, Plaintiffs and the Class are entitled to revoke their acceptances,

receive all payments made to General Motors, and to all incidental and consequential damages, including the costs associated with purchasing marketable or sellable vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

### COUNT VI
### VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT
#### (Mich. Comp. L. Ann. § 445.901, *et seq.*)

151.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

152.    GM and Plaintiffs are each "persons" under Mich. Comp. L. Ann. § 445.902(d).

153.    The sale of the Chevrolet Cruze to Plaintiffs and the Class occurred within "trade and commerce" within the meaning of Mich. Comp. L. Ann. § 445.902(d), and both GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

154.    The MCPA deems unlawful any "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce," as more specifically defined in the MCPA.  Mich. Comp. L. Ann. § 445.903(1).  GM has engaged in unfair, unconscionable, and deceptive methods, acts and practices in violation of the MCPA as described herein.

155.    GM violated the MCPA by "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."  Mich. Comp. L. Ann. § 445.903(s).

156.    As alleged above, Defendant GM knew of the Antifreeze Leakage Defect and airbag defect, while Plaintiffs and the Class were deceived by the Companies' omission into believing the Chevrolet Cruze were safe, reliable, and of good quality, and the information could not have reasonably been known by the consumer until taking possession of the Chevrolet Cruze vehicles.

157.    GM also violated the MCPA by "[m]aking a representation of fact or

26

statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."  Mich. Comp. L. Ann. § 405.903(bb). Indeed, GM represented that the Chevrolet Cruze were safe, reliable and of good quality such that reasonable people believed such representations to be true.

158.    GM also violated the MCPA by "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Mich. Comp. L. Ann. § 405.903(cc).  GM represented that the Chevrolet Cruze were safe, reliable, and of good quality, yet failed to disclose the material fact that the coolant system and airbags were defective.

159.    GM's acts and practices were unfair and unconscionable because their acts and practices, including the manufacture and sale of vehicles with an Antifreeze Leakage Defect and an airbag defect, and the Companies' failure to adequately disclose these defects to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  While GM knew of the ignition switch defects by 2011, it continues to design, manufacture, and market the Chevrolet Cruze until today.

160.    All the while, GM knew that the Chevrolet Cruze has an unreasonable propensity to exhibit malodorous smells during ordinary driving conditions and to fail to deploy airbags in the event of an accident.

161.    Plaintiffs and the Class have suffered an injury, including the loss of money or property, as a result of GM's unfair, unlawful, and/or deceptive practices.

162.    GM failed to inform NHTSA, and therefore failed to inform consumers, that the Chevrolet Cruze had an Antifreeze Leakage Defect and airbag defect. Had Plaintiffs and the Class known this, they would either not have purchased their vehicles at all or would have paid less for them, and would not have retained their Chevrolet Cruze. Plaintiffs and the Class have therefore suffered a "loss" because of the violations of the MCPA complained of herein.

163.    Plaintiffs request that this Court: enjoin GM from continuing its unfair, unlawful, and/or deceptive practices; provide to Plaintiffs and each Class member either their

actual damages as the result of GM's unfair, unlawful, and deceptive trade practices, or $250 per Class member, whichever is higher; award reasonable attorneys' fees; and provide other appropriate relief under Mich. Comp. L. Ann. § 445.911.

164.     Plaintiffs acknowledge that, on its face, the MCPA purports to (i) deprive non-residents of bringing class (but not individual) actions under the MCPA; and (ii) allows individuals (but not class members) the ability to recover a penalty of $250 per person if that amount is greater than their actual damages.  After the United States Supreme Court's decision in *Shady Grove Orthopedic Ass'n, P.A. v. Allstate Ins. Co.*, 589 U.S. 393 (2010), however, any such prohibitions imposed in class actions (but not in individual actions) are trumped and superseded by Fed. R. Civ. P. 23, which imposes no such restrictions.

## COUNT VII
### VIOLATIONS OF THE OTHER STATE STATUTES PROHIBITING UNFAIR AND DECEPTIVE ACTS AND PRACTICES

165.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

166.     The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

167.     Defendant's actions violate the Deceptive Trade Practices Acts of the various states, as set out more fully above, by failing to disclose and by actively concealing the Antifreeze Leakage Defect and airbag defect in Chevrolet Cruze vehicles.

168.     The conduct described in the statement of facts constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices.  The deceptive trade practices acts violated by Defendant are set forth in the next paragraph.

169.     The violations of the various state consumer protection acts (Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 et seq.); Arkansas: the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101 et seq.); California: the California False Advertising Law, California Business & Professions Code § 17200, et. seq.); Colorado: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.);  Washington, D.C. the Consumer Protection Procedures Act (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 et seq. (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 et seq. (West)); Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 et seq.); the Fair Business Practices Act (Ga. Code Ann. §10-1-390 et seq.); and the False Advertising Statute (Ga. Code Ann. §10-1-420 et seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 et seq.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A et seq.); Idaho: the Idaho Consumer Protection Act (Idaho Code §48-601 et seq.); Illinois: the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §505/1 et seq. (Smith Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 et seq. (Smith Hurd)); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 et seq. (Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)); Kansas:  the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401 (West)); Maine: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 §206 et seq.) and the Uniform Deceptive Trade Practices Act (Me. Rev. Stat. Ann. Tit. 10 §1211 et seq.); Maryland: the Maryland Consumer Protection Act (Md. Com. Law Code Ann. §§13-101 et seq., 14-101 et seq.); Massachusetts: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Minnesota: the Consumer Fraud Act (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F.

67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi: the Consumer Protection Act (Miss. Code Ann. §75-24-1 et seq.) and the False Advertising Statutes (Miss. Code Ann. §97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 et seq.); Montana: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-101 et seq.); and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 et seq.); Nevada: the Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.);  New Hampshire: the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1 et seq.); New Jersey: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 et seq. (West)); New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 et seq.); New York: New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350 (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.); North Dakota: Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01 et. seq.); Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 et seq.) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. §616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon); Rhode Island: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 et seq.); South Carolina: South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 et seq.); South Dakota: South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 et seq. (Vernon)); Utah:  Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1 et seq.) and the

Utah Truth in Advertising Act (Utah Code Ann. §13-11a-1 et seq.); Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 et seq.); West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.); Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West)); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 et seq.)) have directly, foreseeably, and proximately caused damages to Plaintiffs and the proposed class in amounts yet to be determined.

170.     As a result of Defendant's violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiffs and Class members have suffered actual damages for which Defendant is liable.

## COUNT VIII
## COMMON LAW NEGLIGENCE

171.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

172.     Defendant had a duty to its customers as a manufacturer of motor vehicles to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably safe and reliable for their intended uses.  Defendant had a duty to adequately test its vehicles' safety before selling millions to consumers worldwide.

173.     Defendant had a duty to test vehicles for airbag and coolant system problems once Defendant was on notice that its vehicles had a propensity to have leaking antifreeze, which can cause a stubborn malodorous smell, and airbag deployment issues, which can fail to prevent otherwise avoidable bodily injury or death.  Moreover, Defendant had a duty to provide true and accurate information to the public to prevent undue risks arising from the foreseeable use of its products.

174.     At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Chevrolet Cruze into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public.

175.     Defendant was negligent, and breached the above duties owed to Plaintiffs and Class members.

176.     As direct and proximate causes of Defendant's breaches, Plaintiffs and the Class have been damaged including, but not limited to, the cost of repairs required due to antifreeze leak and airbag problems, the financial loss of owning the Chevrolet Cruze that are unsafe, unreliable, and of bad quality, and for being subjected to potential risk of injury.

## COUNT IX
## COMMON LAW FRAUDULENT CONCEALMENT

177.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

178.     Defendant concealed material facts concerning the Antifreeze Leakage Defect and airbag defect before, during, and after the sale of the Chevrolet Cruze to Plaintiffs and Class members, intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs and the Class information that is highly relevant to their purchasing decision.

179.     Defendant had a duty to disclose Antifreeze Leakage Defect and airbag defect because it was known only to Defendant, who had superior knowledge and access to the facts, and Defendant knew it was not known to or reasonably discoverable by Plaintiffs and Class members.  These concealed facts were material because they directly impact the safety and value of the Chevrolet Cruze.  Whether the coolant system and airbags were designed and manufactured appropriately are material concerns.

180.     Defendant actively concealed these material facts, in whole or in part, to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiffs and the Class.

181.     Plaintiffs and the Class were unaware of these concealed material facts and would not have acted as they did if they had known of the concealed facts.  Plaintiffs' and Class members' actions were justified.  Defendant was in exclusive control of the material facts and the public, Plaintiffs, and the Class did not know of these facts prior to purchasing the Chevrolet Cruze.

182.     Because of the concealment of the facts, Plaintiffs and the Class sustained damage because they purchased and retained Chevrolet Cruze that are now diminished in value from what they would have been had Defendant timely disclosed the Antifreeze Leakage Defect and airbag defects.

183.     Defendant further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the vehicles they were selling had no significant defects and would perform and operate properly when driven in normal usage.

184.     The above misrepresentations and concealments were material because they were facts that would typically be relied upon by a person purchasing or leasing a new motor vehicle, and if it had been disclosed Plaintiffs and the Class, they would not have bought or leased the Chevrolet Cruze.

185.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and Class members' rights and well-being, and to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT X
## BREACH OF CONTRACT / COMMON LAW WARRANTY

186.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

forth herein.

187.    To the extent General Motors' repair or adjust commitment is deemed not to be a warranty under New York's or Michigan's Uniform Commercial Code, Plaintiffs plead in the alternative under common law contract law. General Motors limited the remedies available to Plaintiffs and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by General Motors, and/or warranted the quality or nature of those services to Plaintiffs.

188.    General Motors breached this warranty or contract obligation by failing to repair the Chevrolet Cruze vehicles evidencing the Antifreeze Leakage Defect, including those that were recalled, or to replace them.

189.    As a direct and proximate result of Defendant' breach of contract or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XI
## UNJUST ENRICHMENT

190.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

191.    General Motors had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs and the Class.

192.    As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, General Motors charged a higher price for their vehicles than the vehicles' true value and General Motors obtained monies which rightfully belong to Plaintiffs.

193.     General Motors was thus enriched at the expense of Plaintiffs, and it would be against equity and good conscience for General Motors to retain these wrongfully obtained profits.

194.     Plaintiffs, therefore, are entitled to restitution and seek an order establishing General Motors as constructive trustees of the profits unjustly obtained, plus interest.

**COUNT XII**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, et seq.)**

195.     Plaintiffs incorporate by reference and re-allege all paragraphs alleged herein.

196.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

197.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

198.     General Motors is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

199.     The Chevrolet Cruze vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

200.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

201.     General Motors' express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Chevrolet Cruze vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

202.     General Motors breached these warranties as described in more detail above, but generally by not repairing or adjusting the Chevrolet Cruze vehicles' materials and workmanship

defects; providing Chevrolet Cruze vehicles which are not in merchantable condition, exhibit the Antifreeze Leakage Defect, and are not fit for the ordinary purpose for which vehicles are used; providing Vehicles that were not fully operational or reliable; and not curing defects and nonconformities once they were identified.

203.    Plaintiffs and Class members have had sufficient direct dealings with either the Defendant or their agents (dealerships) to establish privity of contract between Plaintiffs and the Class members. Notwithstanding this, privity is not required in this case because Plaintiffs and Class members are intended third-party beneficiaries of contracts between General Motors and its dealers; specifically, they are the intended beneficiaries of General Motors' implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Chevrolet Cruze vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

204.    Plaintiffs have engaged in each of General Motors' three steps to customer satisfaction without their concerns being resolved. Plaintiff Feliciano has contacted her dealership to discuss the situation with the dealership customer relations manager, without adequate resolution.

205.    Even if this were not the case, requiring an informal dispute settlement procedure, or affording General Motors a reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile. At the time of sale or lease of each Chevrolet Cruze vehicle, General Motors knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Chevrolet Cruze vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be

inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or afford General Motors a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

206.    Plaintiffs and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because General Motors is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Class have not re-accepted their Chevrolet Cruze vehicles by retaining them.

207.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

208.    Plaintiffs seek to revoke their acceptance of the Chevrolet Cruze vehicles, or, in the alternative, seek all damages, including diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT XIII
## COMMON LAW FRAUD

209.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

210.    General Motors had knowledge of the quality and safety defects in its vehicles, which it failed to disclose to Plaintiffs and the Class.

211.    Defendant hid the true nature of the quality and safety of its vehicles because to fix the known defect would cost more than settling claims of the purchaser's of the defective Chevrolet Cruze.

212.    Defendant knew that some purchasers would not bring suit, saving Defendant the

costs of engineering a fix, recalling the defective vehicles and repairing them.

213.    As a result of its wrongful and fraudulent acts, affirmative misrepresentations and omissions, as set forth with particularity above, pertaining to the design defect of their vehicles and the concealment of the defect, General Motors charged a higher price for their vehicles than the vehicles' true value and General Motors obtained monies which rightfully belong to Plaintiffs.

214.    Defendant also saved money it would have to spend to repair these defects.

215.    Defendant knowingly made affirmative misstatements to purchasers as alleged with particularity *supra*.

216.    Defendant intentionally concealed and failed to disclose the true facts about its vehicles for the purpose of inducing Plaintiffs and the Class to purchase and continue to purchase the Chevrolet Cruze.

217.    General Motors, by its fraudulent acts, was thus wrongfully enriched at the expense of Plaintiffs.

218.    Plaintiffs, therefore, are entitled to restitution and seek an order establishing General Motors as constructive trustees of the profits unjustly obtained, plus interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and on behalf of the Class pray:

A.    For an order certifying this action as a class action, appointing Plaintiffs as representatives of the Class and appointing their attorney as counsel for the Class;

B.    For Defendant to pay lease and car loan payments until General Motors repairs or replaces the parts involved in the Antifreeze Leakage Defect for Chevrolet Cruze vehicles;

C.     For all compensatory and other appropriate damages on all applicable claims in an amount to be proven at trial, including the diminution in value of Chevrolet Cruze vehicles as a result of the acts complained of herein;

D.     For an award of Plaintiffs' and the Class' damages as provided in New York's General Business Law;

E.     For an order permanently enjoining Defendant from engaging in the unlawful practices alleged herein;

F.     For all equitable remedies available;

G.     For an award of attorneys' fees, costs and expenses;

H.     For an award of pre- and post-judgment interest;

I.     For punitive damages; and

J.     For such other and further relief that the Court deems appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury on all issues so triable.

Dated: October 6, 2014

LAW OFFICES OF PAUL C. WHALEN, P.C.

By: _____
Paul C. Whalen (PW1300)
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 627-5610

Robert Ahdoot, (*pro hac vice* pending)
rahdoot@ahdootwolfson.com
Tina Wolfson, (*pro hac vice* pending)
twolfson@ahdootwolfson.com
Bradley K. King, (*pro hac vice* pending)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585