| | |
|---|---|
| SHEILAH FELICIANO, LESLIE WILBANKS, PATRICK MURPHY, and YULIA MILAVANAVA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS LLC, GENERAL MOTORS HOLDINGS LLC, and GENERAL MOTORS COMPANY, <br><br> Defendants. | Case No.  1:14-cv-06374-AT <br><br> **THIRD AMENDED CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiffs Sheilah Feliciano, Patrick Murphy, Leslie Wilbanks, and Yulia Milavanava ("Plaintiffs"), individually and on behalf of all others similarly situated, allege for their Third Amended Class Action Complaint against Defendants General Motors LLC, General Motors Holdings LLC, and General Motors Company (collectively, "Defendants" or "General Motors") as follows:

## INTRODUCTION

1.     This is a class action seeking monetary damages, restitution, and declaratory relief from General Motors, notably arising from its practice of engaging in unfair and deceptive trade practices in connection with the merchandising and sale of the motor vehicle branded the Chevrolet Cruze.

2.     Since 2010, General Motors, a car manufacturer, has sold hundreds of thousands of vehicles under the Chevrolet Cruze brand name throughout the United States.

3.     The Chevrolet Cruze models use antifreeze in order to protect various mechanical components by keeping the water in the car's radiator and engine from freezing in cold temperatures and boiling in hot temperatures.  It also is used to lubricate the moving parts it comes in contact with.  General Motors promised and/or warranted in its advertising and marketing of the Chevrolet Cruze to potential buyers that it would operate safely and reliably.  This promise turned out to be false in several material respects.

4.     In reality, the Chevrolet Cruze has a serious mechanical defect that causes antifreeze to leak from the radiator (hereinafter referred to as the "Antifreeze Leakage Defect").  The Antifreeze Leakage Defect can lead to mechanical troubles and/or can cause a malodorous smell in the passenger compartment.  General Motors concealed and did not fix the Antifreeze Leakage Defect plaguing all 2011 or newer Chevrolet Cruze models.

5.     The Chevrolet Cruze has an Antifreeze Leakage Defect where antifreeze fumes emanate into the passenger compartment, causing a noxious smell.

6.     In press releases, sales literature, brochures, advertisements, and other consumer documents, General Motors has consistently promoted the Chevrolet Cruze as being "safe, "reliable," and, in essence, "more for your money."

7.     On Defendants' 2012 product page, it stated:

Cruze proved itself in some hostile environments: continuous driving in the heat of the Arabian Desert, high altitude in the Alps, intense moisture in Thailand, and more. Then it was put through its paces on some of the best test tracks in the world, including the famed Nürburgring in Germany, a beastly track and proving grounds generally reserved for high-performance or track-ready vehicles.

Cruze is one of the most tested vehicles in Chevrolet history….

8.     Even today, Defendants tout the benefits and safety: "Cruze goes beyond your typical compact car. Its modern styling on the exterior hints at the ground-breaking vehicle inside — one so efficient, so safe and so technologically advanced, it redefines the category."

9.     Yet almost immediately, there were problems, and on May 9, 2012 on the car forum CruzeTalk.com, user "cruze 2011" posted:

> well after owning my 2011 cruze since december 2011 and 22000 miles its been back to the dealer several times for the coolant issue and today after the dealer ship told me there is no fix until chevy comes up with one i called chevrolet customer assistance idont think its right i have to continue to drive this car with the coolant smell in it the dealer has put die in it atlease 2 times and found nothing is leaking. has anybody had their cars fixed yet with this issue? [*sic*]

10.     General Motors, through its agents, markets and promotes the Cruze as a better and cheaper alternative to other, more popular vehicles manufactured by its competitors, including Honda Motor Company and Volkswagen.

11.     General Motors received reports of antifreeze related complaints that placed General Motors on notice of the serious design and mechanical defects presented by the Antifreeze Leakage Defect.   Indeed, General Motors issued at least two Service Bulletins intended to correct the Antifreeze Leakage Defect.

12.     On information and belief, the number of complaints may prove to be much greater once the complaints known only to General Motors are analyzed.

13.     Because of the Antifreeze Leakage Defect, the Chevrolet Cruze diminishes in value at a faster rate than it would without the Antifreeze Leakage Defect.   Plaintiffs and the proposed Class would not have purchased the Chevrolet Cruze if they knew of the Antifreeze Leakage Defect.   Alternatively, had they known of the Antifreeze Leakage Defect, Plaintiff and the proposed Class would not have paid as much for the Chevrolet Cruze.

14.     Despite General Motors' notice of the Antifreeze Leakage Defect in Chevrolet Cruzes, General Motors did not disclose to consumers that Chevrolet Cruzes—which General Motors for years had advertised and/or warranted as "safe" and "reliable"—were in fact not as safe or reliable as a reasonable consumer expected due to the Antifreeze Leakage Defect. Rather than disclose the truth, General Motors concealed the existence of the Antifreeze Leakage Defect and promised consumers that any known defects had been corrected.

15.     Consumers have complained about the Antifreeze Leakage Defect online at various consumer complaint websites. *See, e.g.*:

- http://www.aboutautomobile.com/Complaint/2012/Chevrolet/Cruze/Engine+and+Engine+Cooling+System;

- http://www.aboutautomobile.com/Complaint/2011/Chevrolet/Cruze/Engine+and+;Engine+Cooling+System;

- http://www.faqs.org/car/chevrolet-cruze/engine-and-engine-cooling/.

(All links, last visited on October 6, 2014.)

16.     The Antifreeze Defect was also the subject of a number news features:

- https://www.youtube.com/watch?v=t8uxX4SQnoQ (WPXI-TV Channel 11 news feature, last visited October 6, 2014);

- https://www.youtube.com/watch?v=w4eu6uVgimM (WSBTV Channel 2 news feature, last visited October 6, 2014).

17.     Despite years of warnings, General Motors failed to properly disclose, explain, or fix the defects of the Chevrolet Cruze. This leaves thousands, if not all, of Chevrolet Cruze owners with vehicles that have an Antifreeze Leakage Defect causing malodorous noxious and poisonous fumes to emanate in the passenger compartment that makes the vehicle unusable,

constant maintenance when a vehicle is used, and other mechanical problems, all resulting in severe economic harm to these Chevrolet Cruze owners.

18.     The Chevrolet Cruze's Antifreeze Leakage Defect is preventable.  For example, other cars in the same class of cars as the Chevrolet Cruze do not have the same Antifreeze Leakage Defect.  Furthermore, General Motors successfully produced cars that do not have an Antifreeze Leakage Defect.

19.     When owners of the Chevrolet Cruze became aware of the Antifreeze Leakage Defect and notified General Motors of the problem through one of its agents, General Motors still did not correct the Antifreeze Leakage Defect.  Once owners of the Chevrolet Cruze began complaining on complaint boards on websites and other public fora, the public realized that General Motors had not corrected the Antifreeze Leakage Defect, the value of Chevrolet Cruze cars significantly diminished.

20.     General Motors has been unable or unwilling to provide an adequate repair.

21.      Because General Motors cannot or will not provide an adequate repair, the Antifreeze Leakage Defect harms every owner of a Chevrolet Cruze because it directly affects the operation, safety, and the individual value of every Chevrolet Cruze in the marketplace.

**JURISDICTION AND VENUE**

22.     This Court has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants.  See 28 U.S.C.  § 1332(d)(2)(A).

23.     This Court also has personal jurisdiction over Defendants because they are authorized to do business and in fact do business in this state and District and Defendants have sufficient minimum contacts with this state and District, and/or otherwise intentionally avail themselves of the markets in this state and District through the promotion, marketing and sale of their products in this state and District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District under 28 U.S.C. § 1391. Defendants do substantial business in the State of New York and within this District, advertise in this District, receive substantial compensation and profits from the sales of their automobiles and other goods and services in this District, list their stock on the NYSE, and have breached contracts and warranties in this District so as to subject them to *in personam* jurisdiction in this District.

## THE PARTIES

25.     Plaintiff Sheilah Feliciano ("Plaintiff Feliciano") is a resident and citizen of the State of New York.

26.     Plaintiff Leslie Wilbanks ("Plaintiff Wilbanks") is a resident and citizen of the State of Michigan.

27.     Plaintiff Patrick Murphy ("Plaintiff Murphy") is a resident and citizen of the State of New York.

28.     Plaintiff Yulia Milavanava ("Plaintiff Milavanava") is a resident and citizen of the State of Florida.

29.     Plaintiffs bring this action in Plaintiffs' own right and on behalf of all others similarly situated. Plaintiffs have incurred financial losses as a result of their purchase of the Chevrolet Cruze model.

30.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan.  The sole member and owner of General Motors LLC is General Motors Holdings LLC.  General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.  The sole member and owner of General Motors Holdings LLC is General Motors Company.  General Motors Company is a Delaware Corporation, which has its principal place of business in the State of Michigan, and is a citizen of the States of Delaware and Michigan.  General Motors LLC was incorporated in 2009 and, effective on July 10, 2009, acquired substantially all assets and assumed certain liabilities of General Motors Corporation through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

31.     General Motors designs, manufactures, markets, distributes, and sells Chevrolet Cruzes in New York, Michigan, Florida, and throughout the United States.

32.     General Motors distributes Chevrolet Cruzes and sells these Chevrolet Cruzes through its network of dealers.

33.     Money received from the purchase of a General Motors vehicle from a dealer flows from the dealer to Defendants.

34.     Money received by the dealer from a purchaser can be directly traced to General Motors.

## FACTUAL BACKGROUND

35.     General Motors began selling the Chevrolet Cruze in the United States in 2010. The Chevrolet Cruze is four-door, five-passenger sedan.

36.     The Chevrolet Cruze requires antifreeze to ensure that the mechanical

components of the vehicle run properly. However, as described above, the Chevrolet Cruze has an Antifreeze Leakage Defect.

37. General Motors has a three (3) year/36,000 express warranty that covers the Antifreeze Leakage Defect.

38. The sale of the vehicle and the warranty create privity between Defendants and individual consumers who purchased the Chevrolet Cruze, like Plaintiffs and the proposed Class Members, by, among other things, making their express warranty directly to and for the benefit of Plaintiffs and the proposed Classes, and making their warranty part of the basis of the bargain and inducement to purchase their product.

39. Defendants' express written warranty does not disclaim the implied warranty of merchantability.

40. Despite this express warranty, Defendants have known for years of the Antifreeze Leakage Defect and the bad and poisonous smell associated with the leak.

41. A multitude of customers, including Plaintiffs and other proposed Class Members, have complained and submitted their Chevrolet Cruzes for repair work related to this Antifreeze Leakage Defect.

42. The Antifreeze Leakage Defect is a systemic design, materials, and/or workmanship defect and not merely a manufacturing peculiarity of a select number of Defendants' Chevrolet Cruzes.

43. The Antifreeze Leakage Defect has, does, or will affect all members of the proposed Classes, including Plaintiffs.

**The Defect In Plaintiff Feliciano's Chevrolet Cruze**

44. On or about January 8, 2013, Plaintiff Feliciano purchased a 2011 Chevrolet

8

Cruze for approximately $14,265.60, plus a $11,121.60 finance charge, from Spurr Chevrolet Buick Pontiac General Motors Company ("Spurr Chevrolet") in Brockport, New York, bearing the Vehicle Identification Number 1G1PF5S93B7267691.

45.     Plaintiff Feliciano is a consumer and purchased the Chevrolet Cruze primarily for personal use.

46.     Plaintiff Feliciano purchased the Chevrolet Cruze because of familiarity with General Motors' brand and representations of quality through years of General Motors' television and print advertisements.

47.     Plaintiff Feliciano's purchase of a 2011 Chevrolet Cruze from Spurr Chevrolet included a limited warranty. The limited warranty provided that cars with "36,000 miles, but less than 80,000 miles, coverage will apply for sixty (60) days after delivery or three thousand (3,000) miles[.]" At the time of purchase, the 2011 Chevrolet Cruze's odometer read 54,413 miles.

48.     In February of 2013, within the warranty period, Plaintiff Feliciano's Chevrolet Cruze began exhibiting the Antifreeze Leakage Defect.

49.     Plaintiff Feliciano notified General Motors through its agent, Spurr Chevrolet, of the Antifreeze Leakage Defect and attempted to have the Chevrolet Cruze repaired through Spurr Chevrolet at least twice with no success.

50.     On at least one occasion, Spurr Chevrolet attempted to repair the Antifreeze Leakage Defect.

51.     In February 2013, when Plaintiff Feliciano first complained that an antifreeze smell was coming into the cabin, Spurr Chevrolet, acting as agent, representative, and/or ostensible agent of Defendants, assured her that the smell was related to the air conditioning

system and made a material omission of fact regarding the existence of the known and pervasive Antifreeze Leakage Defect.

52.     On March 26, 2014, Plaintiff Feliciano again complained about the coolant smell to the service department at Spurr Chevrolet, as well as a potential oil leak, but it was not fixed and technicians only replaced a coolant hose and repaired a distinct part related to the hydraulic brakes that had been recalled.

53.     On June 5, 2014, Plaintiff Feliciano complained of a noise and "Service Engine Soon" or SES light.  Spurr's service department found a water leak and replaced the water pump, brakes and rotors.

54.     Plaintiff Feliciano's 2011 Chevrolet Cruze continues to exhibit a malodorous smell when in operation, and especially when the heater is running.

55.     As a result of the Antifreeze Leakage Defect, Plaintiff Feliciano's use and enjoyment of his Chevrolet Cruze was constantly and substantially impaired.  Specifically, Plaintiff Feliciano had to endure the odor caused by the Antifreeze Leakage Defect and Plaintiff's Chevrolet Cruze significantly diminished in value because of the defect.

56.     Due to this Antifreeze Leakage Defect, Plaintiff Feliciano demanded rescission in a timely manner from Defendants.  Defendants refused to honor this demand.

57.     As a direct result of the Antifreeze Leakage Defect and General Motors' unwillingness or inability to fix it, Plaintiff has attempted to trade in her 2011 Chevrolet Cruze, but has been offered less than $5,000 for the car, which is a total loss of value since her January 2013 purchase of approximately $10,000.

**The Defect In Plaintiff Wilbanks' Chevrolet Cruze**

58.     On or about February 2012, Plaintiff Wilbanks purchased a new 2012 Chevrolet

Cruze from Matthews Hargreaves Chevrolet, 2000 E. 12 Mile Rd., Royal Oak, MI 48067.

59.     Plaintiff Wilbanks purchased the Chevrolet Cruze because of familiarity with General Motors' brand and representations of quality through years of General Motors' television and print advertisements.

60.     Plaintiff Wilbanks' Chevrolet Cruz came with a three (3) year/36,000-mile warranty and the powertrain warranty for 100,000 miles or five (5) years.   Plaintiff Wilbanks Chevrolet Cruze now has 37,000 miles at the time of filing this Amended Complaint and is no longer under GM's 36,000-mile warranty.

61.     On numerous occasions while the vehicle was under GM's 36,000-mile warranty, Plaintiff Wilbanks brought her Chevrolet Cruze to Matthews Hargreaves Chevrolet and complained of the noxious smell coming into the passenger cabin.

62.     In particular, Plaintiff Wilbanks told the Matthews Hargreaves dealership that the malodorous emission/smell from the engine/radiator was so bad that a film developed on the inside of all the windows and she had to clean the windows once a month to remove this film. She also informed them that the smell was particularly bad when she had to use the heat during winter months.

63.     Plaintiff Wilbanks also found a sticky, clearish sludge at the top of her pedals underneath the dashboard in her 2012 Chevrolet Cruze.   The sludge smells like antifreeze fluid.

64.     To date, GM has not fixed the Antifreeze Leakage Defect in Plaintiff Wilbanks' vehicle, the malodorous smell is still present in the vehicle, and she still has to clean the inside windows of her vehicle once a month.   In fact, the Matthews Hargreaves dealership has denied that the Antifreeze Leakage Defect or that the malodorous emission problem even exists in her 2012 Chevrolet Cruze.

65.     Nevertheless, in the last month from the filing of this Amended Complaint, Plaintiff Wilbanks tried to trade in her 2012 Chevrolet Cruze to the Matthews Hargreaves dealership, and they only offered her $5000 for the vehicle even though the Kelley Blue Book value of the car is $12,000.00.

66.     In deciding to purchase her 2012 Chevrolet Cruze, Plaintiff Wilbanks relied on Defendants' representations that the 2012 Chevrolet Cruze was safe and reliable.

67.     Plaintiff Wilbanks still owes $12,000 on her 2012 Chevrolet Cruze.

**The Defect In Plaintiff Murphy's Chevrolet Cruze**

68.     On January 31, 2011, Plaintiff Murphy purchased a brand new 2011 Chevrolet Cruze from Country Chevrolet in Warwick, New York.

69.     Plaintiff Murphy purchased the 2011 Chevrolet Cruze because of familiarity with General Motors' brand and representations of quality through years of General Motors' television and print advertisements.

70.     Plaintiff Murphy's 2011 Chevrolet Cruze came with a three (3) year/36,000-mile warranty and the powertrain warranty for 100,000 miles or five (5) years.

71.     In the first year that Plaintiff Murphy owned his 2011 Chevrolet Cruze, he drove it infrequently because he owned other cars.

72.     In 2012 and 2013, Plaintiff Murphy noticed a noxious smell coming into the passenger cabin, and that the smell was worse during the winter when he was running the heat.

73.     In October of 2013 when the car had 21,000 miles on it, Plaintiff Murphy brought his 2011 Chevrolet Cruze to be serviced because of this noxious smell at Healy Chevrolet in Middletown, New York when his Cruze was still under warranty. Defendants denied that there was an Antifreeze Leakage Defect. Nevertheless, in an effort by Defendants to fix the problem

with the noxious smell, Plaintiff Murphy paid out of pocket to pay for the replacement of the coolant surge tank.

74.     In March of 2014, Plaintiff Murphy brought his 2011 Chevrolet Cruze to be serviced again because of this noxious smell at Healy Chevrolet in Middletown, New York. Defendants attempted to correct the problem of the noxious smell, but were unable.

75.     In fall of 2014, Plaintiff Murphy found that the noxious smell in the passenger cell of his 2011 Chevy Cruze was getting worse as he had to use the heat more with the approach of winter.  The smell was so bad and palpable within the passenger cell that it would sting his face and eyes.

76.     Because of this worsening situation, on October 25, 2014, Plaintiff Murphy traded in his 2011 Chevrolet Cruze and received a value of $9,400 that went to a Ford Focus from Crossroads, Ford at 2351 U.S. 9W, Ravena, NY 12143.  His 2011 Chevrolet Cruze only had approximately 36,000 miles on it.

77.     After trading in his 2011 Chevrolet Cruze, Plaintiff Murphy received a similar letter from Defendants about the Antifreeze Leakage Defect as is attached hereto as Exhibit A.

**The Defect In Plaintiff Milavanava's Chevrolet Cruze**

78.     On or about November 1, 2013, Plaintiff Milavanava purchased a new 2014 Chevrolet Cruze from from Lou Bachrodt Chevrolet, located at 5500 N State Road 7, Coconut Creek, FL 33073.

79.     Plaintiff Milavanava purchased the 2014 Chevrolet Cruze because of familiarity with General Motors' brand and representations of quality through years of General Motors' television and print advertisements.  Prior to this purchase, she also rented a Chevrolet Cruze and had a positive experience with how this rented car drove and did not experience any evidence of

the Antifreeze Leakage Defect.

80.     Plaintiff Milavanava Chevrolet Cruze came with a three (3) year/36,000-mile warranty and the powertrain warranty for 100,000 miles or five (5) years.

81.     On three separate occasions while the vehicle was under Defendants' 36,000-mile warranty, Plaintiff Milavanava brought her Chevrolet Cruze to Lou Bachrodt Chevrolet and complained of the Antifreeze Leakage Defect evident in the noxious smell coming into the passenger cabin.

82.     In particular, on her third visit to Lou Bachrodt Chevrolet regarding the Antifreeze Leakage Defect in November of 2013, Plaintiff Milavanava complained to the dealership that "while driving vehicle or idling with windows up/down the car," she was getting symptoms of burning eyes, skin, nose, throat, and stomach, sneezing, headache, and eventually feeling light-headed.  She further stated that she felt "like throwing up" and that "there is a toxic irritant in vehicle."

83.     Upon inspection of the vehicle, Lou Bachrodt Chevrolet found "a chemical reaction coming from inside the vehicle," but was unable to find the source of this chemical reaction.

84.     Because Lou Bachrodt Chevrolet was unable to fix the Defect in her 2014 Chevrolet Cruze, Plaintiff Milavanava was unable to drive her 2014 Chevrolet Cruze and had to rent a vehicle for a month, costing her $850.00.

85.     Since GM could not correct the Antifreeze Leakage Defect in her 2014 Chevrolet Cruze, on or about December 12, 2013, Plaintiff Milavanava traded in her 2014 Chevrolet Cruze for another new 2014 Chevrolet Cruze ("2014 Cruze #2") that GM represented did not have the same problem, but made her pay $3,200.00 more for the 2014 Cruze #2.

86.  Her 2014 Cruze #2 also exhibits the Antifreeze Leakage Defect.

87.  Plaintiff Milavanava made a complaint with the Better Business Bureau about her first 2014 Chevrolet Cruze against Defendants and the dealership, but that complaint was denied.

88.  In October of 2014, Plaintiff Milavanava received a letter from Defendants about the Antifreeze Leakage Defect.  In the letter, Defendants state:

> This letter is intended to make you aware that your 2014 model year Chevrolet Cruze vehicle equipped with a 1.4L engine may have an engine coolant leak from the water pump. The pump may leak from the weep reservoir or from the water pump shaft seal, leading to a drip of coolant onto the engine or onto the ground. Over time, the loss of coolant will reduce cooling performance and eventually could lead to engine overheating. If this condition is not corrected, the "Service Engine" indicator light may come on, an "Engine Hot, AC Off message may appear, a chime may sound, and the engine power may be reduced.

*See* Letter to Cruze Owners, attached hereto as Exhibit A.

89.  As a direct and proximate result of Defendants' conduct, Plaintiffs and the proposed Classes are entitled to actual damages for the failure of consideration in connection with and/or difference in value arising out of the variance between Defendants' Chevrolet Cruze as warranted and Defendants' Chevrolet Cruze containing the defect; the depression of resale value of the Chevrolet Cruze models suffered by Plaintiffs and the proposed Classes arising out of the Antifreeze Leakage Defect; sufficient funds to permit Plaintiffs and the proposed Class to obtain effective repairs for each affected Chevrolet Cruze using proper parts and adequately trained labor; a refund of all monies paid out-of-pocket by Plaintiffs and the proposed Classes as compensation for all out-of-pocket expenses that Plaintiffs and the proposed Classes have incurred as a result of being unable to use their Chevrolet Cruze models, including any and all alternative forms of transportation; and/or rescission of their contracts of sale and/or lease, as appropriate.

90.     Those in the proposed Classes who no longer own their Chevrolet Cruze models are entitled to damages for the higher cost of ownership of their new vehicles, whether due to higher insurance premiums, worse gas mileage, or the depreciation or their new car.

## CLASS ALLEGATIONS

91.     Plaintiffs adopt and incorporate by reference all the substantive allegations contained in this Third Amended Complaint as though set forth in their entirety herein.

92.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23. Plaintiffs seek certification of a Nationwide Class and, alternatively, New York, Michigan, and Florida Subclasses.

93.     The Nationwide Class is initially defined as follows:

> Any individual or entity residing in the United States that purchased or leased a model year 2011 or newer Chevrolet Cruze vehicle.

94.     The New York Subclass is initially defined as follows:

> Any individual or entity residing in New York that purchased or leased a model year 2011 or newer Chevrolet Cruze vehicle.

95.     The Michigan Subclass is initially defined as follows:

> Any individual or entity residing in Michigan that purchased or leased a model year 2011 or newer Chevrolet Cruze vehicle.

96.     The Florida Subclass is initially defined as follows:

> Any individual or entity residing in Florida that purchased or leased a model year 2011 or newer Chevrolet Cruze vehicle.

97.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether class certification is appropriate.

98. Excluded from the Classes are:

i. Defendants and any entities in which Defendants have a controlling interest;

ii. Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

iii. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

iv. Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;

v. All persons or entities that properly execute and timely file a request for exclusion from the Classes;

vi. Any attorneys representing the Plaintiffs or the proposed Classes; and

vii. All governmental entities.

99. <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>. The proposed Classes are comprised of over 100 people and possibly thousands of individuals who were Defendants' customers, the joinder of which in one action would be impracticable. Due to the nature of the trade and commerce involved, the members of the proposed Classes are geographically dispersed throughout the United States and joinder of all the proposed Class members would be impracticable. The exact number or identification of the proposed Class members is presently unknown. The identity of the proposed Class members is ascertainable and can only be determined based on Defendants' records.

100. <u>Typicality—Fed. R. Civ. P. 23(a)(3)</u>. Plaintiffs assert claims that are typical of the entire proposed Classes. The claims of the representative Plaintiffs are typical of the claims

of the proposed Classes in that the representative Plaintiffs, like all proposed Class members, are victims of General Motors' unfair and deceptive trade practices in connection with the merchandising and sale of the Chevrolet Cruze. The representative Plaintiffs, like all proposed Class members, have been damaged by General Motors' misconduct through General Motors' unfair and deceptive trade practices in luring consumers to purchase a Chevrolet Cruze based on false promises and assurances. The Chevrolet Cruze has a significant Antifreeze Leakage Defect, which has caused consumers to incur a substantial loss due to the rapid depreciation of the Chevrolet Cruze's value. Additionally, consumers will continue to incur an unfair and unconscionable financial loss. Furthermore, the factual basis of General Motors' misconduct is common to all proposed Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the proposed Classes.

101. <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. There are numerous questions of law and fact common to the proposed Classes and those common questions predominate over any questions affecting only individual Class members. The common questions of law and fact that predominate over individual questions include, but are not limited to, the following:

a. Whether model year 2011 and newer Chevrolet Cruzes are manufactured with a latent Antifreeze Leakage Defect;

b. Whether the presence of a latent Antifreeze Leakage Defect reduces the value of all model year 2011 and newer Chevrolet Cruzes;

c. Whether General Motors had knowledge of the Antifreeze Leakage Defect;

d. Whether General Motors concealed the Antifreeze Leakage Defect from

consumers;

e. Whether General Motors' affirmative misrepresentations and omissions regarding the reliability of its Chevrolet Cruzes were likely to deceive a reasonable person;

f. Whether General Motors' vehicles were deceptively marketed, distributed, and sold;

g. Whether General Motors breached its express warranties regarding the safety and quality of its Chevrolet Cruzes;

h. Whether General Motors breached the implied warranty of merchantability because its Chevrolet Cruzes were not fit for their ordinary purpose due to their Antifreeze Leakage Defect;

i. Whether Defendants violated the Magnuson-Moss Warranty Act;

j. Whether, by the misconduct set forth herein, Defendants violated the common laws of negligent misrepresentation and unjust enrichment;

k. Whether Plaintiffs and proposed Classes are entitled to damages, restitution, disgorgement, equitable relief, and/or other relief; and

l. The amount and nature of such relief to be awarded to Plaintiffs and the proposed Classes.

102. Other questions of law and fact common to the proposed Classes include:

a. The proper method or methods by which to measure damages; and

b. The declaratory relief to which the proposed Classes are entitled.

103. Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiffs are adequate representatives of the proposed Classes because Plaintiffs fit within the class definition and Plaintiffs' interests do not conflict with the interests of the members of the proposed Classes

Plaintiffs seek to represent. Plaintiffs are committed to the vigorous prosecution of this action. Plaintiffs are represented by experienced Class Counsel. Class Counsel has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of all Class members. Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the members of the proposed Classes.

104.    _Superiority—Fed. R. Civ. P. 23(b)(3)_.    The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the proposed Classes have suffered irreparable harm as a result of Defendants' conduct. Because of the size of each Class member's claims, no Class members could afford to seek legal redress for the wrongs identified in this Third Amended Class Action Complaint. Without the class action vehicle, the proposed Classes would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the conduct that is the subject of this Third Amended Class Action Complaint, and Defendants would be permitted to retain the proceeds of its violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

105.    Even if the proposed Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties,

allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**COUNT I**
**Violation of N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs Feliciano and Murphy and the New York Subclass)**

106.    Plaintiffs Feliciano and Murphy re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

107.    New York General Business Law ("G.B.L.") § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

108.    Plaintiffs Feliciano and Murphy are consumers as defined by G.B.L. § 349.

109.    Defendants' sale of its product to Plaintiffs Feliciano and Murphy and the New York Subclass as described herein constitute the "conduct of any trade or commerce" within the meaning of G.B.L. § 349.

110.    In the course of General Motors' business selling its products to consumers, it willfully failed to disclose and actively concealed the Antifreeze Leakage Defect in Chevrolet Cruze vehicles as described above to Plaintiffs Feliciano and Murphy and the New York Subclass.

111.    Accordingly, General Motors made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts to Plaintiffs Feliciano and Murphy and the New York Subclass.

112.    General Motors engaged in a deceptive acts or practices when it failed to disclose material information to Plaintiffs Feliciano and Murphy and the New York Subclass concerning the Chevrolet Cruze which was known to General Motors at the time of the sale.

113.     General Motors deliberately withheld the information about the Chevrolet Cruze's propensity for antifreeze leaks resulting in obnoxious smells in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

114.     The propensity of the Chevrolet Cruze to have an Antifreeze Leakage Defect was a material fact to Plaintiffs Feliciano and Murphy and the New York Subclass.

115.     Had Plaintiffs Feliciano and Murphy and the New York Subclass known that the Chevrolet Cruze had this serious defect, they would not have purchased the Chevrolet Cruze.

116.     Plaintiffs Feliciano and Murphy and the New York Subclass suffered injury caused by General Motors' affirmative statements, as well as their failure to disclose material information.

117.     Plaintiffs Feliciano and Murphy and the New York Subclass overpaid for their vehicles and did not receive the benefit of their bargain.

118.     The value of their Chevrolet Cruze vehicles have diminished now that the Antifreeze Leakage Defect has come to light, and Plaintiffs Feliciano and Murphy and the New York Subclass own vehicles that are not of good quality.

119.     Pursuant to G.B.L. § 349, Plaintiffs Feliciano and Murphy and the New York Subclass are entitled to recover the greater of actual damages or $50.  Because General Motors acted willfully or knowingly as described herein, Plaintiffs Feliciano and Murphy and the New York Subclass are entitled to recover three times actual damages, up to $1,000.

## COUNT II
### Violation of N.Y. Gen. Bus. Law § 350
### (On Behalf of Plaintiffs Feliciano and Murphy and the New York Subclass)

120.     Plaintiffs Feliciano and Murphy re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

121.    G.B.L. § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce . . . ."  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ."  G.B.L. § 350-a.

122.    Plaintiffs Feliciano and Murphy are consumers as defined by G.B.L. § 350.

123.    Defendants' sale of its vehicles to Plaintiffs Feliciano and Murphy and the New York Subclass as described herein constitute the "conduct of any trade or commerce" within the meaning of G.B.L. § 350.

124.    Defendants' advertisement and marketing of its vehicles to Plaintiffs Feliciano and Murphy and the New York Subclass as described herein constitute the "false advertising in the conduct of any business, trade or commerce" within the meaning of G.B.L. § 350.

125.    In their normal course of business in its dealings with consumers, Defendants caused to be made in, or disseminated through, New York: through advertising, marketing and other publications, Defendants made statements that were untrue or misleading, and which it knew (or which by the exercise of reasonable care should have known) to be untrue and misleading, to Plaintiffs Feliciano and Murphy and the New York Subclass.

126.    Defendants have violated G.B.L. § 350 because the misrepresentations and omissions regarding the safety and reliability of its vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

127.    Plaintiffs Feliciano and Murphy and the New York Subclass have suffered injury, including the loss of money or property, as a result of Defendant's false advertising.

128.    In purchasing or leasing their vehicles, Plaintiffs Feliciano and Murphy and the

New York Subclass reasonably relied Defendants' advertising, and on the affirmative misrepresentations and/or omissions of General Motors with respect to the safety and reliability of the vehicles within that advertising.

129. General Motors' affirmative representations turned out not to be true because the vehicles develop malodorous smells, lowering their true value.

130. Had Plaintiffs Feliciano and Murphy and the New York Subclass known the truth regarding Defendants' vehicles, they would not have purchased or leased their Chevrolet Cruze vehicles and/or paid as much for them.

131. Accordingly, Plaintiffs Feliciano and Murphy and the New York Subclass overpaid for their Chevrolet Cruze vehicles and did not receive the benefit of the bargain for their Chevrolet Cruze vehicles, which now have a lower true market value.

132. Plaintiffs Feliciano and Murphy request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices.

133. Plaintiffs Feliciano and Murphy and the New York Subclass are also entitled to recover their actual damages or $500 whichever is greater. Because General Motors acted willfully or knowingly, Plaintiffs Feliciano and Murphy and the New York Subclass are entitled to recover three times actual damages, up to $10,000.

**COUNT III**
**Breach of Express Warranty**
**N.Y. U.C.C. § 2-313, Mich. Stat. § 440.2313, Fla. Stat. § 672.313**
**(On Behalf of the Nationwide Class)**

134. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

135. Defendants are and at all relevant times were merchants with respect to motor

vehicles under N.Y. U.C.C. § 2-313, Mich. Stat. § 440.2313, and Fla. Stat. § 672.313.

136.    In the course of selling its vehicles, General Motors expressly warranted in writing that the Chevrolet Cruze vehicles were covered by certain warranties, including the Limited Warranty.

137.    General Motors breached the express warranty to repair and/or adjust to correct defects in materials and workmanship of any part supplied by General Motors.  General Motors has not repaired or adjusted, and has been unable to repair or adjust, the Chevrolet Cruze vehicles' materials and workmanship defects.

138.    In addition to warranties such as the Limited Warranty, General Motors expressly warranted several attributes, characteristics, and qualities of Chevrolet Cruze vehicles, as set forth above.

139.    These warranties are only a sampling of the numerous warranties that General Motors made relating to safety, reliability, and operation, which are more fully outlined above. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of Chevrolet Cruze design.  These warranties were made, *inter alia*, in advertisements, in General Motors' brochures, and in uniform statements provided by General Motors to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

140.    These additional warranties were also breached because the Chevrolet Cruze vehicles were not fully operational or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  General Motors did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

141.    Furthermore, the limited warranty of repair and/or adjustments to defective parts,

fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the Nationwide Class whole and because the Defendants have failed and/or has refused to adequately provide the promised remedies within a reasonable time.

142.     Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

143.     Also, as alleged in more detail herein, at the time that Defendants warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding its vehicles.   Plaintiffs and the Nationwide Class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.   The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

144.     Moreover, many of the damages flowing from the Chevrolet Cruze vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Defendants' fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' remedies would be insufficient to make Plaintiffs whole.

145.     Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Nationwide Class assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such

other incidental and consequential damages as allowed under N.Y. U.C.C. §§ 2-608 and 2-711.

146.    General Motors was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and its Chevrolet Cruze customers before or within a reasonable amount of time after the allegations of vehicle defects became public.

147.    As a direct and proximate result of General Motors' breach of express warranties, Plaintiffs and the Nationwide Class have been damaged in an amount to be determined at trial.

## COUNT IV
### Breach of Implied Warranty of Merchantability
### N.Y. U.C.C. § 2-314, Mich. Stat. § 440.2314, Fla. Stat. § 672.316
### (On Behalf of the Nationwide Class)

148.    Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

149.    General Motors is and was at all relevant times a merchant with respect to motor vehicles.

150.    Plaintiffs and the Class as purchasers from Defendants had a successive relationship to the same rights of property in the vehicles and therefore after purchase are in privity with Defendants.

151.    In the instant transactions, a warranty that the Chevrolet Cruze vehicles were in merchantable condition is implied by law.

152.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

153.    Specifically, the Chevrolet Cruze vehicles are inherently defective in that there are defects in the antifreeze system that create obnoxious smells in the cabin compartment, and in that the antifreeze system was not adequately tested.

154.    General Motors was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class before or within a reasonable amount of time after the allegations of vehicle defects became public.

155.    As a direct and proximate result of General Motors' breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**COUNT V**
**Revocation of Acceptance, N.Y. U.C.C. § 2-608**
**(On Behalf of the Nationwide Class)**

156.    Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

157.    Plaintiffs identified above demanded revocation and the demands were refused.

158.    Plaintiffs and the Nationwide Class had no knowledge of such defects and nonconformities, were unaware of these defects, and reasonably could not have discovered them when they purchased or leased their automobiles from General Motors.

159.    Defendants were aware of the defects and nonconformities at the time of sale and thereafter.

160.    Acceptance was reasonably induced by the difficulty of discovery of the defects and nonconformities before acceptance.

161.    There has been no change in the condition of Plaintiffs' vehicles not caused by the defects and nonconformities.

162.    When Plaintiffs sought to revoke acceptance, General Motors refused to accept return of the Chevrolet Cruze vehicles and to refund Plaintiffs' purchase price and monies paid.

163.    Plaintiffs and the Nationwide Class would suffer economic hardship if they

returned their vehicles but did not receive the return of all payments made by them.

164. Because General Motors is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Nationwide Class have not re-accepted their Chevrolet Cruze vehicles by retaining them.

165. These defects and nonconformities substantially impaired the value of the Chevrolet Cruze vehicles to Plaintiffs and the Nationwide Class: this impairment stems from the fact that the repair and adjust warranty has failed of its essential purpose because General Motors cannot repair or adjust the Chevrolet Cruze vehicles.

166. Plaintiffs and the Nationwide Class provided notice of their intent to seek revocation of acceptance by a class-action lawsuit seeking such relief.

167. In addition, Plaintiffs (and many Nationwide Class members) have requested that General Motors accept return of their vehicles and return all payments made.

168. Plaintiffs, on their own behalf and for the putative Nationwide Class, hereby demand revocation and tender their Chevrolet Cruze vehicles.

169. Plaintiffs and the Nationwide Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because General Motors is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Nationwide Class have not re-accepted their Chevrolet Cruze vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

170. Finally, due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the Nationwide Class assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to

the Nationwide Class of the purchase price of all vehicles currently owned.

171.    Consequently, Plaintiffs and the Nationwide Class are entitled to revoke their acceptances, receive all payments made to General Motors, and to all incidental and consequential damages, including the costs associated with purchasing marketable or sellable vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**COUNT VI**
**Violations of Michigan Consumer Protection Act, Mich. Comp. L. Ann. § 445.901, *et seq.***
**(On Behalf of Plaintiff Wilbanks and the Michigan Subclass)**

172.    Plaintiff Wilbanks re-alleges and incorporates by reference all preceding factual allegations as thought fully set forth herein.

173.    Defendants and Plaintiff Wilbanks are each "persons" under Mich. Comp. L. Ann. § 445.902(d).

174.    The sale of the Chevrolet Cruze to Plaintiff Wilbanks and the Michigan Subclass occurred within "trade and commerce" within the meaning of Mich. Comp. L. Ann. § 445.902(d), and Defendants committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

175.    The Michigan Consumer Protection Act ("MCPA") deems unlawful any "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce," as more specifically defined in the MCPA.  Mich. Comp. L. Ann. § 445.903(1).  Defendants have engaged in unfair, unconscionable, and deceptive methods, acts and practices in violation of the MCPA as described herein.

176.    Defendants violated the MCPA by "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."  Mich. Comp. L. Ann. § 445.903(s).

177.     As alleged above, Defendants knew of the Antifreeze Leakage Defect, while Plaintiff Wilbanks and the Michigan Subclass were deceived by Defendants' omission into believing the Chevrolet Cruze were safe, reliable, and of good quality, and the information could not have reasonably been known by the consumer until taking possession of the Chevrolet Cruze vehicles.

178.     Defendants also violated the MCPA by "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."  Mich. Comp. L. Ann. § 405.903(bb). Indeed, Defendants represented that the Chevrolet Cruze were safe, reliable and of good quality such that reasonable people believed such representations to be true.

179.     Defendants also violated the MCPA by "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Mich. Comp. L. Ann. § 405.903(cc).  Defendants represented that the Chevrolet Cruze were safe, reliable, and of good quality, yet failed to disclose the material fact that the coolant system was defective.

180.     Defendants' acts and practices were unfair and unconscionable because their acts and practices, including the manufacture and sale of vehicles with an Antifreeze Leakage Defect, and Defendants' failure to adequately disclose these defects to the National Highway Traffic Safety Administration ("NHTSA") and the Michigan Subclass and timely implement a remedy, offend established public policy, and because the harm Defendants caused consumers greatly outweighs any benefits associated with those practices.

181.     All the while, Defendants knew that the Chevrolet Cruze has an unreasonable propensity to exhibit malodorous smells during ordinary driving conditions.

182.     Plaintiff Wilbanks and the Michigan Subclass have suffered an injury, including

the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices.

183.    Defendants failed to inform NHTSA, and therefore failed to inform consumers, that the Chevrolet Cruze had an Antifreeze Leakage Defect.  Had Plaintiff Wilbanks and the Michigan Subclass known this, they would either not have purchased their vehicles at all or would have paid less for them, and would not have retained their Chevrolet Cruze.  Plaintiff Wilbanks and the Michigan Subclass have therefore suffered a "loss "because of the violations of the MCPA complained of herein.

184.    Plaintiff Wilbanks requests that this Court: enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices; provide to Plaintiff Wilbanks and each Michigan Subclass member either their actual damages as the result of Defendants' unfair, unlawful, and deceptive trade practices, or $250 per Michigan Subclass member, whichever is higher; award reasonable attorneys' fees; and provide other appropriate relief under Mich. Comp. L. Ann. § 445.911.

185.    Plaintiff Wilbanks acknowledges that, on its face, the MCPA purports to (i) deprive non-residents of bringing class (but not individual) actions under the MCPA; and (ii) allows individuals (but not class members) the ability to recover a penalty of $250 per person if that amount is greater than their actual damages.  After the United States Supreme Court's decision in *Shady Grove Orthopedic Ass'n, P.A. v. Allstate Ins. Co.*, 589 U.S. 393 (2010), however, any such prohibitions imposed in class actions (but not in individual actions) are trumped and superseded by Fed. R. Civ. P. 23, which imposes no such restrictions.

## COUNT VII
**Violations of the Other State Statutes Prohibiting Deceptive Trade Practices**
**(On Behalf of the Nationwide Class)**

186. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

187. The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

188. Defendants' actions violate the deceptive trade practices acts of the various states, as set out more fully above, by failing to disclose and by actively concealing the Antifreeze Leakage Defect in Chevrolet Cruze vehicles.

189. The conduct described in the statement of facts constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices. The deceptive trade practices acts violated by Defendants are set forth in the next paragraph.

190. The violations of the various state consumer protection acts (Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1, *et seq.*); Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471, *et seq.*); Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521, *et seq.*); Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101, *et seq.*); California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et. seq.*) and False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et. seq.*); Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101, *et seq.*); Connecticut Unfair Trade Practices Act

(Conn. Gen. Stat. §42-110a, *et seq.*); Washington, D.C. Consumer Protection Procedures Act (D.C. Code Ann. §28-3901, *et seq.*); Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201, *et seq.*) and False Advertising Statutes (Fla. Stat. Ann. §817.40, *et seq.*); Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370, *et seq.*), Fair Business Practices Act (Ga. Code Ann. §10-1-390, *et seq.*), and False Advertising Statute (Ga. Code Ann. §10-1-420, *et seq.*); Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480, *et seq.*) and Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A, *et seq.*); Idaho Consumer Protection Act (Idaho Code §48-601, *et seq.*); Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §505/1, *et seq.*) and Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. §510/1, *et seq.*); Indiana Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1, *et seq.*); Iowa Consumer Fraud Act (Iowa Code Ann. §714.16); Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623, *et seq.*); Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401); Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 §206, *et seq.*) and Uniform Deceptive Trade Practices Act (Me. Rev. Stat. Ann. Tit. 10 §1211, *et seq.*); Maryland Consumer Protection Act (Md. Com. Law Code Ann. §§13-101, *et seq.*; 14-101, *et seq.*); Massachusetts Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Minnesota Consumer Fraud Act (Minn. Stat. Ann. §325 F. 69), False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67), Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44), and Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi Consumer Protection Act (Miss. Code Ann. §75-24-1, *et seq.*) and False Advertising Statutes (Miss. Code Ann. §97-23-3); Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010, *et seq.*); Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-101, *et seq.*) and Statutory Deceit Statute (Mont. Code Ann. §27-1-

712); Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601, *et seq.*) and Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301, *et seq.*); Nevada Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903, *et seq.*; 41.600, *et seq.*); New Hampshire Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1, *et seq.*); New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1, *et seq.*); New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1, *et seq.*); New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350); North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1, *et seq.*); North Dakota Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01, *et. seq.*); Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01, *et seq.*); Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751, *et seq.*) and Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51, *et seq.*); Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §646.605, *et seq.*) and Food and Other Commodities Act (Or. Rev. Stat. §616.005, *et seq.*); Pennsylvania Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1, *et seq.*); Rhode Island Consumer Protection Act (R.I. Gen. Law §6-13.1-1, *et seq.*); South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10, *et seq.*); South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1, *et seq.*); Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101, *et seq.*); Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*); Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1, *et seq.*) and Truth in Advertising Act (Utah Code Ann. §13-11a-1, *et seq.*); Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451, *et seq.*); Virginia Consumer Protection Act (Va. Code 59.1-196, *et seq.*); Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86, *et seq.*); West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101, *et seq.*); Wisconsin Fraudulent Representations Act

(Wis. Stat. Ann. §100.18, *et seq.*); Wyoming Consumer Protection Act (Wyo. Stat. §40-12-101, *et seq.*)) have directly, foreseeably, and proximately caused damages to Plaintiffs and the proposed Nationwide Class in amounts yet to be determined.

191.    As a result of Defendants' violations of the deceptive trade practices acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiffs and Nationwide Class members have suffered actual damages for which Defendants are liable.

**COUNT VIII**
**Common Law Negligence**
**(On Behalf of the Nationwide Class)**

192.    Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

193.    Defendants had a duty to their customers as a manufacturer of motor vehicles to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably safe and reliable for their intended uses.  Defendants had a duty to adequately test their vehicles' safety before selling millions to consumers worldwide.

194.    Defendants had a duty to test vehicles for coolant system problems once Defendants were on notice that its vehicles had a propensity to have leaking antifreeze. Moreover, Defendants had a duty to provide true and accurate information to the public to prevent undue risks arising from the foreseeable use of their products.

195.    At all times relevant, Defendants sold, marketed, advertised, distributed, and otherwise placed Chevrolet Cruze into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public.

196.    Defendants were negligent, and breached the above duties owed to Plaintiffs and Nationwide Class members.

197. As direct and proximate causes of Defendants' breaches, Plaintiffs and the Nationwide Class have been damaged including, but not limited to, the cost of repairs required due to antifreeze leak problems, the financial loss of owning the Chevrolet Cruze that are unsafe, unreliable, and of bad quality, and for being subjected to potential risk of injury.

**COUNT IX**
**Common Law Fraudulent Concealment**
**(On Behalf of the Nationwide Class)**

198. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

199. Defendants concealed material facts concerning the Antifreeze Leakage Defect before, during, and after the sale of the Chevrolet Cruze to Plaintiffs and Nationwide Class members, intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs and the Nationwide Class information that is highly relevant to their purchasing decision.

200. Defendants had a duty to disclose Antifreeze Leakage Defect because it was known only to Defendants, who had superior knowledge and access to the facts, and Defendants knew it was not known to or reasonably discoverable by Plaintiffs and Nationwide Class members. These concealed facts were material because they directly impact the safety and value of the Chevrolet Cruze. Whether the coolant system was designed and manufactured appropriately are material concerns.

201. Defendants actively concealed these material facts, in whole or in part, to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiffs and the Nationwide Class.

202. Plaintiffs and the Nationwide Class were unaware of these concealed material

facts and would not have acted as they did if they had known of the concealed facts. Plaintiffs' and Nationwide Class members' actions were justified. Defendants were in exclusive control of the material facts and the public, Plaintiffs, and the Nationwide Class did not know of these facts prior to purchasing the Chevrolet Cruze.

203. Because of the concealment of the facts, Plaintiffs and the Nationwide Class sustained damage because they purchased and retained Chevrolet Cruze that are now diminished in value from what they would have been had Defendants timely disclosed the Antifreeze Leakage Defect.

204. Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the vehicles they were selling had no significant defects and would perform and operate properly when driven in normal usage.

205. The above misrepresentations and concealments were material because they were facts that would typically be relied upon by a person purchasing or leasing a new motor vehicle, and if it had been disclosed Plaintiffs and the Nationwide Class, they would not have bought or leased the Chevrolet Cruze.

206. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and Nationwide Class members' rights and well-being, and to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT X
### Breach of Contract/Common Law Warranty
### (On Behalf of the Nationwide Class)

207.     Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

208.     To the extent Defendants' repair or adjust commitment is deemed not to be a warranty under New York's, Michigan's, and/or Florida's Uniform Commercial Code, Plaintiffs plead in the alternative under common law contract law.  General Motors limited the remedies available to Plaintiffs and the Nationwide Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by General Motors, and/or warranted the quality or nature of those services to Plaintiffs.

209.     General Motors breached this warranty or contract obligation by failing to repair the Chevrolet Cruze vehicles evidencing the Antifreeze Leakage Defect or to replace them.

210.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiffs and the Nationwide Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XI
### Unjust Enrichment
### (On Behalf of the Nationwide Class)

211.     Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

212.     General Motors had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs and the Nationwide Class.

213.     As a result of its wrongful and fraudulent acts and omissions, as set forth above,

pertaining to the design defect of their vehicles and the concealment of the defect, General

Motors charged a higher price for their vehicles than the vehicles' true value and General Motors

obtained monies which rightfully belong to Plaintiffs.

214.    General Motors was thus enriched at the expense of Plaintiffs, and it would be

against equity and good conscience for General Motors to retain these wrongfully obtained

profits. Plaintiffs, therefore, are entitled to restitution and seek an order establishing General

Motors as constructive trustees of the profits unjustly obtained, plus interest.

**COUNT XII**
**Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.***
**(On Behalf of the Nationwide Class)**

215.    Plaintiffs re-allege and incorporate by reference all preceding factual allegations

as thought fully set forth herein.

216.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by

virtue of 28 U.S.C. § 1332 (a)-(d).

217.    Plaintiffs and the Nationwide Class are "consumers" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

218.    General Motors is a "supplier" and "warrantor" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

219.    The Chevrolet Cruze vehicles are "consumer products" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

220.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is

damaged by the failure of a warrantor to comply with a written or implied warranty.

221.    General Motors' express warranties are written warranties within the meaning of

the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Chevrolet Cruze vehicles' implied

warranties are covered under 15 U.S.C. § 2301(7).

222.     General Motors breached these warranties as described in more detail above, but generally by not repairing or adjusting the Chevrolet Cruze vehicles' materials and workmanship defects; providing Chevrolet Cruze vehicles which are not in merchantable condition, exhibit the Antifreeze Leakage Defect, and are not fit for the ordinary purpose for which vehicles are used; providing Vehicles that were not fully operational or reliable; and not curing defects and nonconformities once they were identified.

223.     Plaintiffs and Nationwide Class members have had sufficient direct dealings with either General Motors or its agents (dealerships) to establish privity of contract between Plaintiffs and Nationwide Class members.  Notwithstanding this, privity is not required in this case because Plaintiffs and Class members are intended third-party beneficiaries of contracts between General Motors and its dealers; specifically, they are the intended beneficiaries of General Motors' implied warranties.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Chevrolet Cruze vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

224.     Plaintiffs have engaged in each of General Motors' three steps to customer satisfaction without their concerns being resolved. Plaintiffs have contacted their dealerships to discuss the situation with the dealerships' customer service managers, without adequate resolution.

225.     Even if this were not the case, requiring an informal dispute settlement procedure, or affording General Motors a reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile.  At the time of sale or lease of each Chevrolet Cruze vehicle,

General Motors knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Chevrolet Cruze vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or afford General Motors a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

226. Plaintiffs and the Nationwide Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Because General Motors is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Nationwide Class have not re-accepted their Chevrolet Cruze vehicles by retaining them.

227. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

228. Plaintiffs seek to revoke their acceptance of the Chevrolet Cruze vehicles, or, in the alternative, seek all damages, including diminution in value of their vehicles, in an amount to be proven at trial.

<u>**COUNT XIII**</u>
**Common Law Fraud**
**(On Behalf of the Nationwide Class)**

229. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as thought fully set forth herein.

230. General Motors had knowledge of the quality and safety defects in its vehicles,

which it failed to disclose to Plaintiffs and the Nationwide Class.

231.     Defendants hid the true nature of the quality and safety of its vehicles because to fix the known defect would cost more than settling claims of the purchasers of the defective Chevrolet Cruze.

232.     Defendants knew that some purchasers would not bring suit, saving Defendants the costs of engineering a fix, recalling the defective vehicles and repairing them.

233.     As a result of its wrongful and fraudulent acts, affirmative misrepresentations and omissions, as set forth with particularity above, pertaining to the design defect of their vehicles and the concealment of the defect, General Motors charged a higher price for their vehicles than the vehicles' true value and General Motors obtained monies which rightfully belong to Plaintiffs.

234.     Defendants also saved money they would have to spend to repair these defects.

235.     Defendants knowingly made affirmative misstatements to purchasers as alleged above with particularity.

236.     Defendants intentionally concealed and failed to disclose the true facts about its vehicles for the purpose of inducing Plaintiffs and the Nationwide Class to purchase and continue to purchase the Chevrolet Cruze.

237.     General Motors, by its fraudulent acts, was thus wrongfully enriched at the expense of Plaintiffs.

238.     Plaintiffs, therefore, are entitled to restitution and seek an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

**COUNT XIV**
**Violations of Florida Deceptive and Unfair Trade Practices Act**,
**Fla. Stat. Ann. §501.201, *et seq.***
**(On Behalf of Plaintiff Milavanava and the Florida Subclass)**

239.    Plaintiff Milavanava re-alleges and incorporates by reference all preceding factual allegations as thought fully set forth herein.

240.    This is a claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. §§ 501.201-501.2101.

241.    FDUTPA provides that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct "of any trade or commerce" are unlawful.  Fla. Stat. §501.204.

242.    Under FDUTPA, "trade or commerce" is defined to include any advertisement or solicitation relating to any "thing of value."  Fla. Stat. §501.203(8).

243.    Plaintiff Milavanava and Florida Subclass members are persons as defined and construed under the FDUTPA.  Fla. Stat. §§501.201-501.213.

244.    The practices employed by General Motors, whereby General Motors sells and markets its Chevrolet Cruze vehicles without disclosing the dangerous Antifreeze Leakage Defect in these vehicles' design are unfair, deceptive, and misleading.

245.    Defendants have engaged in unfair competition and unfair, unlawful of fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiff Milavanava and Florida Subclass members the fact that the Chevrolet Cruze vehicles suffer from a design defect, the Antifreeze Leakage Defect (and the costs, risks, and diminished value of their vehicles as a result of this problem), which was not readily discoverable, especially since Defendants kept denying the existence of this defect.  Defendants should have disclosed this information because they were in a superior position to know the true

facts related to this design defect, and Plaintiff Milavanava and Florida Subclass members could not reasonably be expected to learn or discover the true facts related to this defect until after manifestation of the defect.

246. Even though General Motors knew or should have known of the defective nature of the Chevrolet Cruze vehicles, it continued to sell the vehicles to consumers without properly disclosing the Antifreeze Leakage Defect or correcting this defect.

247. Defendants' sales practices were deceptive, misleading, and intended to increase their own profits to the detriment of the consumers. Defendants have profited from their uniform deceptive practices, in that Defendants received millions of dollars for the defective vehicles, which are dangerous causing Plaintiff Milavanava and the Florida Subclass substantial injuries.

248. Plaintiff Milavanava and the Florida Subclass would not have paid for the defective vehicles if General Motors had disclosed the defects of their Vehicles.

249. Plaintiff Milavanava and the Florida Subclass suffered actual damages as a result of General Motors' deceptive and unfair trade acts.

250. Plaintiff Milavanava reserves the right to allege other violations of law that constitute unlawful business acts or practices based on the above-alleged conduct. Such conduct is ongoing and continues to this date.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the above-defined Classes, pray:

A. For an order certifying this action as a class action, appointing Plaintiffs as representatives of the Classes and appointing their attorney as counsel for the Classes;

B. For Defendants to pay lease and car loan payments until Defendants repair or replace the parts involved in the Antifreeze Leakage Defect for Chevrolet Cruze vehicles;

C.    For all compensatory and other appropriate damages on all applicable claims in an amount to be proven at trial, including the diminution in value of Chevrolet Cruze vehicles as a result of the acts complained of herein;

D.    For an award of Plaintiffs' and the Classes' damages as provided in New York's General Business Law, the Michigan Consumer Protection Act, the Florida Deceptive and Unfair Trade Practices Act, and the other states' deceptive trade practices acts;

E.    For an order permanently enjoining Defendants from engaging in the unlawful practices alleged herein;

F.    For all equitable remedies available;

G.    For an award of attorneys' fees, costs, and expenses;

H.    For an award of pre- and post-judgment interest;

I.    For punitive damages; and

J.    For such other and further relief that the Court deems appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.


Dated: February 20, 2015

**AHDOOT & WOLFSON, PC**

By: /s/ Bradley K. King
Robert Ahdoot (Admitted *pro hac vice*)
rahdoot@ahdootwolfson.com
Tina Wolfson (Admitted *pro hac vice*)
twolfson@ahdootwolfson.com
Bradley K. King (Admitted *pro hac vice*)
bking@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

Paul C. Whalen (PW1300)
**LAW OFFICES OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 627-5610

*Attorneys for Plaintiffs*