UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/16
```

SHEILAH FELICIANO, LESLIE WILBANKS,
PATRICK MURPHY, and YULIA MILAVANAVA,
individually and on behalf of all others similarly
situated,

                              Plaintiffs,

              -against-

GENERAL MOTORS LLC, GENERAL MOTORS
HOLDINGS LLC, and GENERAL MOTORS
COMPANY,

                              Defendants.

14 Civ. 06374 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

Defendants, General Motors LLC, General Motors Holdings LLC and General Motors

Company ("GM" or "Defendants"), move to dismiss the Third Amended Complaint ("the

complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]  For

the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[2]

This is a putative class action involving an alleged mechanical defect in the Chevrolet

Cruze, a four-door, five-passenger sedan manufactured by GM.  Compl. ¶¶ 31, 35, ECF No. 36.

Plaintiffs, Sheila Feliciano, Leslie Wilbanks, Patrick Murphy and Yulia Milavanava, claim that

their Cruzes have a defect that causes antifreeze to leak from the radiator, which, in turn, "can

lead to mechanical troubles" and cause antifreeze fumes to "emanate into the passenger

compartment," resulting in a malodorous smell.  *Id.* ¶¶ 4-5. Each Plaintiff alleges that their

---

[1] Plaintiffs have withdrawn Counts II, V, VII, X, and XIII of the complaint.  Pl. Mem. 3 n.1, ECF No. 41.

[2] The following facts are taken from the complaint and accepted as true for the purposes of this motion.
*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Cruze was covered by a written warranty, but that GM has been "unable or unwilling to provide an adequate repair." *Id.* ¶¶ 20, 47, 60, 70, 80.  Plaintiffs claim that GM received reports of complaints related to the defect, and issued at least two service bulletins, in the form of letters, alerting Cruze owners to the defect. *Id.* ¶¶ 11, 77, 88; Ex. A, ECF No. 36.  Plaintiffs allege that Cruzes manufactured since 2011 have this defect.  Compl. ¶¶ 4-5.

I.     Sheilah Feliciano

On January 8, 2013, Feliciano bought a 2011 Cruze from Spurr Chevrolet Buick Pontiac General Motors Company in Brockport, New York. *Id.* ¶ 44.  She claims that Spurr Chevrolet is an agent of GM. *Id.* ¶ 49.  At the time of purchase, the vehicle's odometer read 54,413 miles. *Id* ¶ 47.  The Cruze came with a limited warranty which provided that for cars with "36,000 miles but less than 80,000 miles, coverage will apply for sixty (60) days after delivery or three thousand (3,000) miles."[3] *Id.* ¶ 47.  In February 2013, Feliciano notified Spurr Chevrolet of an antifreeze smell coming into the cabin. *Id.* ¶ 51.  In March 2014, she again complained about the smell to Spurr Chevrolet. *Id.* ¶ 52.  Spurr Chevrolet did not fix the problem, and Feliciano's car continues to have a malodorous smell. *Id.* ¶ 54.

II.    Leslie Wilbanks

Wilbanks purchased a new 2012 Cruze in February 2012 from Matthews Hargreaves Chevrolet in Royal Oak, Michigan. *Id.* ¶ 58.  She complained to Matthews Hargreaves on numerous occasions about a smell coming into the passenger cabin. *Id.* ¶ 61.  Wilbanks also informed them that a film developed on the inside of all the windows and that she had to clean the windows once a month to remove the film. *Id.* ¶ 62.  Wilbanks also found "a sticky, clearish sludge at the top of her pedals underneath the dashboard" which smelled like antifreeze fluid. *Id.*

---

[3] GM admits that Plaintiff Feliciano's car had a warranty issued by GM but claims it expired by the time she purchased the car.  Def. Mem. 14-15.  GM's position is that the extended warranty was not issued by GM. *Id.*

¶ 63. The dealership denied that there was a problem. *Id.* ¶ 64.

III.     Patrick Murphy

On January 31, 2011, Murphy purchased a new 2011 Cruze from County Chevrolet in

Warwick, New York. *Id.* ¶ 68. In 2012 and 2013, he noticed a noxious smell coming into the

passenger cabin. *Id.* ¶ 72. In October 2013, Murphy brought his Cruze to Healy Chevrolet in

Middletown, New York, where the dealer denied that there was a defect. *Id.* ¶ 73. Murphy paid

out of pocket for the replacement of a coolant surge tank. *Id.* The problem continued and in

March 2014, he brought his car back to Healy Chevrolet, where the dealer was unable to fix the

problem. *Id.* ¶ 74. In the fall of 2014, Murphy found that "the smell was so bad and palpable

within the passenger cell that it would sting his face and eyes." *Id.* ¶ 75. The smell worsened

when the vehicle's heat was on. *Id.* On October 25, 2014, Murphy traded in his Cruze for a

Ford Focus. *Id.* ¶ 76. He subsequently received a letter from Defendants about the defect. *Id.* ¶

77.

IV.     Yulia Milavanava

On November 1, 2013, Milavanava purchased a new 2014 Cruze from Lou Bachrodt

Chevrolet in Coconut Creek, Florida. *Id.* ¶ 78. On three occasions while the vehicle was under

warranty, she brought her car into Lou Bachrodt and complained of the smell coming into the

passenger cabin. *Id.* ¶ 81. Milavanava complained to the dealership that she experienced

"burning eyes, skin, nose, throat, and stomach, sneezing, headache" and "light-headed[ness]."

*Id.* ¶ 82. She stated she felt "like throwing up" and that "there is a toxic irritant in [the] vehicle."

*Id.* Lou Bachrodt was unable to fix the problem, and Milavanava could not drive her Cruze for a

month. *Id.* ¶ 84. In December 2013, she traded in her 2014 Cruze for another new 2014 Cruze.

*Id.* ¶ 85. Milavanava's second 2014 Cruze exhibits the same problem. *Id.* ¶ 86. In October

2014, she received a letter from Defendants about the defect. *Id.* ¶ 88.  The letter describes an

engine coolant leak from the water pump. *Id.*

## DISCUSSION

I.   Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual

allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  Plaintiffs are not required to provide "detailed factual allegations" in the

complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555.  In addition, the facts pleaded in the

complaint "must be enough to raise a right to relief above the speculative level." *Id.*  On a

12(b)(6) motion to dismiss, a district court may consider only the complaint, documents attached

to the complaint, matters of which a court can take judicial notice, documents possessed by the

plaintiffs, or documents that the plaintiffs knew about and relied upon. *See Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  A district court considering a Rule 12(b)(6)

motion must accept all factual allegations in the complaint as true, and must draw all reasonable

inferences in favor of the non-moving party. *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d

87, 98 (2d Cir. 2007).

For fraud claims to survive a motion to dismiss, "a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  For a fraud claim "to comply

with Rule 9(b), the complaint must:  (1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d

4

Cir. 2006) (citation and internal quotation marks omitted).  A complaint alleging fraud, moreover, must plead facts that give rise to a strong inference of scienter.  *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).

II.   <u>Application</u>

Plaintiffs allege breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, violation of state consumer protections statutes[4], negligence, fraudulent concealment, and unjust enrichment.  Defendants move to dismiss each of the claims.

A. Express Warranty Claim (Count III)

Defendants argue that (1) GM did not create an express warranty through advertising and (2) Plaintiffs cannot state a claim for breach of the limited warranty issued by GM.

1. Express Warranty

Plaintiffs allege that GM, through its advertising, created an express warranty that it breached under New York, Michigan, and Florida law.[5]  Plaintiffs point to GM's claims that the Cruze was "safe," "reliable," and offered "more for your money," Compl. ¶ 6, and allege that GM thereby "promised heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of Chevrolet Cruze design" *Id.* ¶ 139.  Plaintiffs also contend that the warranties were made in uniform statements provided by GM to be made by salespeople. *Id.*  Defendants argue that Plaintiffs fail to allege a breach because GM's advertising did not create an express warranty.

---

[4] Plaintiffs bring their state consumer protection claims pursuant to the New York General Business Law § 349, Florida Deceptive and Unfair Trade Practices Act, and the Michigan Consumer Protection Act.

[5] The claims are pursuant to N.Y. U.C.C. § 2-313, Mich. Comp. Laws § 440.2313, and Fla. Stat. § 672.313.

"[A]n express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies." *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (N.Y. App. Div. 2008). "Statements made in promotional materials, advertisements, and brochures may be sufficient to create an express warranty if the buyer relies on those statements in making his purchase." *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013). However, there can be no warranty if the statements are "puffery" or "sales talk." *Id.* Puffery includes "generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) *6 (citing *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991)); *see also Hayes Constr. Co. v. Silverthorn*, 72 N.W.2d 190, 192 (Mich. 1955) ("'[P]uffing'. . . [is] a salesman's praise of his own property, involving matters of estimate or judgment upon which reasonable men may differ.").

The Court finds that the statements and representations at issue amount to puffery and are insufficient to create an express warranty between Plaintiffs and GM under New York, Michigan, and Florida law. These statements are neither facts about the Cruze, nor specific representations about the product. *See Mitchell v. Gen. Motors LLC*, No. 13 Civ. 498, 2014 WL 1319519, at *8 (W.D. Ky. Mar. 31, 2014) (holding, in a case involving the same alleged Cruze antifreeze defect, that GM's advertising was puffery, insufficient to create a warranty); *see also Hubbard*, 1996 WL 274018, at *7 (finding that statements that Suburbans are "'like a rock', 'popular' and 'dependable'" were "puffery, upon which a purchaser could not reasonably rely").

2.  Limited Warranty

GM provides a limited warranty with the purchase of every new Cruze for "3 years or 36,000 miles, whichever comes first." Limited warranty 4, Ex. B, ECF No. 39-2.[6] The limited warranty "covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period." *Id.* The warranty limits remedies to "performance of repairs and needed adjustments" and excludes all incidental and consequential damages. *Id.* at 13. The warranty also contains a written notice requirement requiring consumers to notify GM in writing prior to filing suit. *Id.* at 40.

Plaintiffs argue that Defendants breached the limited warranty because "[GM] has not repaired or adjusted, and has been unable to repair or adjust, the Chevrolet Cruze vehicles' materials and workmanship defects." Compl. ¶ 137.  Defendants seek dismissal of the claim, arguing (a) Plaintiffs did not provide written notice to Defendants as required by the limited warranty, (b) Feliciano's limited warranty expired before she purchased the vehicle, and (c) the limited warranty limits Plaintiffs' remedies to the repair and adjustment of their vehicles for both express and implied warranty claims.

a.  Notice Requirement

GM contends that under the terms of the warranty, written notice is a condition precedent to bringing a claim for breach of the limited warranty. Def. Mem. in Reply 3, ECF No. 42.  The relevant provision of the limited warranty states:

> Laws in many states permit owners to obtain a replacement vehicle or a refund of the purchase price under certain circumstances. The provisions of these laws vary from state to state. To the extent allowed by state law, GM requires that you first provide us with written

---

[6] The Court is permitted to consider the limited warranty submitted by GM because Plaintiffs relied on the terms of warranty to bring the breach of limited warranty claim. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

> notification of any service difficulty you have experienced so that we
> have an opportunity to make any needed repairs before you are eligible
> for the remedies provided by these laws. The address for written
> notification[] is in Customer Assistance Offices on page 43.

Limited warranty 40. GM argues that Plaintiffs did not give the required written notice and that,

therefore, their claims are precluded. *See Burns v. Winnebago Indus. Inc.,* 492 F.492 F. App'x

44, 47-49 (11th Cir. 2012); *Schultz v. General R.V. Center*, No. 04-72562, 2006 WL 2583140, at

*3,6 (E.D. Mich. Sep. 6, 2006).

Plaintiffs, however, do allege that they gave written notice to GM. *See* Compl. ¶ 146.

The complaint states "[GM] was provided notice of these issues by numerous complaints filed

against it, including the instant complaint, and by numerous individual letters and

communications sent by Plaintiffs and its Chevrolet Cruze customers before or within a

reasonable amount of time after the allegations of vehicle defects became public." *Id.* Plaintiffs

also contend that they gave notice to the dealers by bringing their Chevrolet Cruzes in for repair

and refer to N.Y. U.C.C § 2-607, which requires buyers to notify the "[s]eller . . . within a

reasonable time after [the buyer] discovers or should have discovered any breach . . . or be

barred from any remedy." Pl. Mem. 31-33, ECF No. 41; N.Y. U.C.C § 2-607.

Because Plaintiffs have pleaded that they provided written notice and the Court must

accept all factual allegations in the complaint as true, Defendants' motion to dismiss on this

ground must be denied. *See Mendelson v. Gen. Motors Corp.*, 432 N.Y.S.2d 132, 136 (N.Y.

Sup. 1980) (stating that the "sufficiency and timeliness of notice are ordinarily questions of

fact"); *see also Hubbard,* 1996 WL 274018, at *4-5 (acknowledging that the "sufficiency and

timeliness of notice" are factual and granting a motion to dismiss without prejudice when the

complaint lacked allegations of notice).

      b.   Feliciano's Express Warranty

Defendants argue that Feliciano cannot maintain a claim for breach of limited warranty because GM's limited warranty expired after 36,000 miles, and Feliciano's Cruze was purchased with 54,413 miles. *See* Compl. ¶ 47. An express written warranty "does not cover repairs made after the applicable time or mileage periods have elapsed." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). Although Feliciano claims that her Cruze came with a limited warranty with more expansive coverage of up to 80,000 miles, she does not allege that the warranty was issued by GM. *See* Compl.¶¶ 47, 48; compare *id.* ¶ ¶ 37, 60, 70, 80 (specifying that the warranty was issued by GM or offered coverage up to 36,000 miles). GM contends that GM did not issue this warranty, and, therefore, cannot be bound by its terms. The Court agrees.

Feliciano's argument that Spurr Chevrolet was GM's "agent, representative, and/or ostensible agent" does not save her breach of limited warranty claim. GM's warranty provides that "GM does not authorize any person to create for it any other obligation or liability in connection with these vehicles." Limited warranty 13. Thus, Feliciano's claim for breach of limited warranty must fail.

Accordingly, Defendants' motion to dismiss Feliciano's express warranty claim is GRANTED.

      c.   Limitation of Remedies for Express and Implied Warranty Claims

Defendants next argue that the claim should be dismissed because GM's limited warranty states that "[p]erformance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty." Limited warranty 13. Under New York law, warranties may limit damages recoverable "to return of the goods and repayment of the price or to repair and replacement of non-confirming goods or parts." N.Y. U.C.C. § 2-719. Michigan

and Florida have nearly identical provisions. *See* Mich. Comp. Laws § 440.2719; Fla. Stat. § 672.719. Plaintiffs argue, however, that the limitations on remedies should not be enforced because the warranty has failed of its essential purpose.[7] *See* N.Y. U.C.C § 2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."); *see also* Mich. Comp. Laws § 440.2719(2); Fla. Stat. § 672.719(2).

To establish that a limited remedy has failed of its essential purpose, "it is not necessary to show that the warrantor's conduct in failing to effect repairs was wilfully dilatory or even negligent." *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606, 611 (N.Y. App. Div. 1983). Instead, the question is whether "an exclusive remedy, which may have appeared fair and reasonable at the inception of the contract, as a result of later circumstances operates to deprive a party of a substantial benefit of the bargain." *Id.*; *see also Richter v. Monaco Coach Corp.*, No. 5:08 Civ. 207, 2009 WL 1537894, at *4 (M.D. Fla. June 2, 2009) ("A repair-or-replace warranty fails of its essential purpose if the warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts."); *Severn v. Sperry Corp.*, 538 N.W.2d 50, 54 (Mich. Ct. App. 1995) ("[A] warranty fails of its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed, in which event the buyer is entitled to seek remedies under the standard UCC warranty provisions.").

Wilbanks, Murphy and Milavanava each claim that they brought their Cruze in for repair while they were under warranty, but that the defect was not fixed. Compl. ¶¶ 61-64, 73-74, 81-

---

[7] Even if the limited warranty can be said to fail of its essential purpose, the warranty's limitation on incidental or consequential damages remains valid unless it is unconscionable. *See Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 476-77 (S.D.N.Y. 2010).

85. Because Wilbanks, Murphy and Milavanava claim that GM has "failed and / or has refused to adequately provide the promised remedies within a reasonable time," Compl. ¶ 141, and "has not repaired or adjusted, and has been unable to repair or adjust, the Chevrolet Cruze vehicles' materials and workmanship defects," Compl. ¶ 137, the Court finds that Plaintiffs have plausibly alleged that the limited warranty failed of its essential purpose. *See Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 476 (S.D.N.Y. 2010) (sustaining failure of limited remedies claim when plaintiff alleged that she "complained of persistent leaking and that the problem was never fixed during the twelve month warranty period"); *Roneker v. Kenworth Truck Co.*, 944 F. Supp. 179, 185 (W.D.N.Y. 1996) (sustaining same claim when plaintiff "repeatedly took the truck in for repairs, and [] the dealer was unable to repair the various problems").

Accordingly, Defendants' motion to dismiss the express warranty claims is DENIED as to Wilbanks, Murphy, and Milavanava.

B.  Implied Warranty of Merchantability (Count IV)[8]

GM argues that the breach of implied warranty claims must be dismissed (1) for lack of privity and (2) because the Cruze was merchantable.

1.  Privity

Under New York and Florida law, privity is required to bring a claim for breach of implied warranty. *See Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 504 N.Y.S.2d 192, 193-94 (N.Y. App. Div. 1986) ("It is now settled that no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged."); *Ocana v. Ford Motor Co.*, 992 So.2d 319, 325 (Fla. Dist. Ct. App. 2008) ("Under Florida law, privity of contract is required to

---

[8] Plaintiffs claim a breach of implied warranty of merchantability under N.Y. U.C.C. § 2-314, Mich. State. § 440.2314 and Fla. Stat. § 672.316.

maintain an action for breach of an implied warranty."); *Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1232 n.5 (M.D. Fla. 2009) ("[T]he general rule is that when a vehicle is purchased directly from a dealer, as opposed to the manufacturer, no privity exists between the [consumer and the manufacturer].") *aff'd in relevant part, vacated on other grounds*, 349 F. App'x. 433 (11th Cir. 2009). However, privity is not required for a breach of implied warranty claim under Michigan law. *Pack v. Damon Corp.*, 434 F.3d 810, 818-20 (6th Cir. 2006).

Because this Court has already held that GM's advertisements did not create an express warranty, Plaintiffs' theory of privity based on express warranty also fails. *See* Pl. Mem. 25. Nor is the Court persuaded that privity exists by virtue of a "successive relationship to the same rights of property in the vehicles." Compl. ¶ 150. Plaintiffs offer no caselaw supporting this alternate theory of privity, and the Court has found none.[9]

Although there is a personal injury exception to the privity requirement in New York and Florida, the exception is not applicable here. *See Lexow*, 504 N.Y.S.2d at 194; *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 900-02 (Fla. 1987). Plaintiffs seek recovery for economic loss related to the value of their vehicle and breach of contract, but do not claim entitlement to damages for personal injury related to the defect.[10] Thus, personal injury cannot serve as a basis for circumventing the privity requirement in this case.[11]

---

[9] Plaintiffs' theory of privity is relevant in the claim preclusion and issue preclusion context. *See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995) ("Privity traditionally has denoted a 'successive relationship to the same rights of property.' In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion.'" (internal citations omitted)).

[10] Plaintiffs have pleaded that Milavanava has experienced symptoms of "burning eyes, skin, nose, throat, stomach, sneezing, headache" and "light headed[ness]," *id.* ¶ 82, and Murphy has indicated that 'the smell was so bad and palpable within the passenger cell that it would sting his face and eyes," *id.* ¶ 75.

[11] Plaintiffs do seek damages under their negligence claim for "being subjected to potential risk of injury," Compl. ¶ 197. However, the Court does not find the addition of Plaintiff's claim for "potential risk of injury" sufficient to change the claim from one of economic loss, where privity is required, to a claim for

12

The Court also declines to apply the "thing of danger "exception. *See Hubbard,* 1996 WL

274018, at *5. Plaintiffs cite *Hubbard,* where a federal district court, interpreting New York

law, recognized an exception to the privity requirement for warranties when the defective

product is a "thing of danger." *Id.* The court explained:

> [W]here an article is of such a character that when used for the purpose for which
> it is made it is likely to be a source of danger to several or many people if not
> properly designed and fashioned, *the manufacturer as well as the vendor* is liable,
> for breach of law-implied warranties . . . .

*Id.* (citing *Goldberg v. Kollsman Instrument Corp.,* 191 N.E.2d 81, 81 (N.Y. 1963) (emphasis in

original); *see also Wade v. Tiffin Motorhomes, Inc.,* 686 F. Supp. 2d 174, 191-92 (N.D.N.Y.

2009); *Doll v. Ford Motor Co.,* 814 F. Supp. 2d 526, 540-41 (D. Md. 2011) (interpreting New

York law).

Whether the *Hubbard* exception accurately reflects New York law is disputed. *See Dixon*

*v. Ford Motor Co.,* No. 14 Civ. 6135, 2015 WL 6437612, at *4-5 (E.D.N.Y. Sept. 30, 2015)

(declining to recognize the exception). Even if there were a "thing of danger exception," it

would not pertain to this case. The exception has been applied when the breach of implied

warranty involved a vehicle with the propensity to roll over, *In re Ford Motor Co. E-350 Van*

*Prods. Liab. Litig. (No. II),* No. 03 Civ. 4558, 2010 WL 2813788, at *74 (D.N.J. July 9, 2010),

vehicles that suddenly "without warning, lose the ability to maintain speed or accelerate," *Doll,*

---

personal injury. The privity requirement operates to limit manufacturer liability. To understand the personal
injury exception to the privity requirement, the Court finds guidance in *East River S.S. Corp. v.
Transamerica Delaval, Inc,* where the Supreme Court explained a related distinction, the Court's
determination that tort recovery for physical injuries due to defective products was permissible, while tort
recovery for economic loss was not. 476 U.S. 858, 871 (1986). "The distinction that the law has drawn
between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does
not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests,
rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing
his products." *Id.* The Court continued, "When a person is injured, the 'cost of an injury and the loss of
time or health may be an overwhelming misfortune,' and one person is not prepared to meet." *Id.* This
Court believes the same considerations apply to waive the privity requirement in personal injury cases.
Accordingly, the Court does not find the addition of "potential risk of injury" to an implied warranty claim
otherwise focused on economic loss sufficient to shift the fundamental nature of the claim to one of personal
injury.

814 F. Supp. 2d at 541, and when there is a "defective propane gas system attached to a recreational vehicle," *Wade*, 686 F. Supp. 2d at 191. *See also Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) (declining to apply exception because "brakes which function properly and simply wear out faster than might otherwise be expected are not inherently a 'thing of danger'"). Although the Court does not rule out the possibility that the alleged Cruze defect may cause health problems, the Court cannot conclude that the defect, as pleaded, "is likely to be a source of danger to several or many people." *See Hubbard*, 1996 WL 274018, at *5.

Accordingly, Defendants' motion to dismiss the implied warranty claims of Feliciano, Murphy, and Milavanava is GRANTED.

2. Merchantability

Defendants argue that Wilbank's implied warranty claim must be dismissed because her Cruze was merchantable as a matter of law. Michigan's Uniform Commercial Code provides that "[g]oods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used." Mich. Comp. Laws § 440.2314. The Michigan Court of Appeals has held:

> To establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller. Under implied warranty theory, a defect is established by proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use. Merchantable is not a synonym for perfect. The warranty of merchantability is that goods are of average quality in the industry.

*Comput. Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 56 (Mich. Ct. App. 2005) (citing *Guaranteed Constr. Co. v. Gold Bond Prods.*, 395 N.W.2d 332, 336 (Mich. Ct. App. 1986)).

14

As the parties acknowledge, the "ordinary purpose" for which a car is to be used is "to enable the purchaser to transport herself upon the streets and highways . . . in a reasonably safe manner." *See e.g., Jackson v. Eddy's LI RV Ctr. Inc.*, 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012); Pl. Mem. 23; Def. Mem. 23.  Wilbanks states that she experienced a "noxious smell," a "film" on the inside of all windows that she had to clean, and a "sticky, clearish sludge at the top of her pedals underneath the dashboard." Compl. ¶¶ 61- 63.  Although Wilbanks alleges defective performance, Wilbanks does not claim the defect kept her from driving her Cruze in a reasonably safe manner.  In fact, the complaint suggests that she was still driving the vehicle when the third amended complaint was filed. Compl.¶¶ 64-65.  Consequently, Wilbanks has failed to state a claim for breach of implied warranty of merchantability. *See Haag*, 969 F. Supp. 2d at 317 (finding no recovery for breach of implied warranty for vehicles which are "minimally 'fit for the ordinary purpose of providing basic transportation,' and which 'satisfy a minimum level of quality,' even if they fail to perform 'exactly as the buyer expected'"); *see also Gorman v. Am. Honda Motor Co. Inc.*, 839 N.W.2d 223, 229 (Mich. Ct. App. 2013) (dismissing claim because "plaintiff failed to produce any evidence that the vehicle was not 'fit for the ordinary purposes for which such goods are used'").

Accordingly, Defendants' motion to dismiss Wilbank's implied warranty claim is GRANTED.

C. Magnuson-Moss Warranty Act (Count XII)

The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, "grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996). "To state a claim under the MMWA, plaintiffs must adequately plead a

cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, No. 14 Civ. 8926, 2015 WL 5123134, at \*16 (S.D.N.Y. Sept. 1, 2015). Because Wilbanks, Murphy, and Milavanava have stated a claim for breach of express warranty under the laws of New York, Florida, and Michigan, they have stated a claim for a violation of the MMWA. *See id.* Given that this Court has dismissed Feliciano's express warranty claim, along with all of the implied warranty claims, Feliciano's MMWA claim must also dismissed. *See also Cali v. Chrysler Grp. LLC*, No. 10 Civ. 7606, 2011 WL 383952, at \*4 (S.D.N.Y. Jan. 18, 2011) ("[C]laims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law.").

The MMWA has an opportunity to cure requirement. *See* 15 U.S.C. § 2310(e).[12] Defendants argue that Murphy and Milavanava's MMWA claims must be dismissed because they traded in their Cruzes and will therefore be unable to provide GM with an opportunity to cure at the next stage in this proceeding.[13] However, Plaintiffs claim to have provided written

---

[12] The relevant MWWA provision provides that:

> No action (other than a class action . . .) may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract, and a class of consumers may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action . . . brought under subsection (d) of this section for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.

15 U.S.C. § 2310(e)

[13] Some courts interpreting 15 U.S.C. § 2310(e) have held that class action plaintiffs are not required to provide an opportunity to cure until after the class has been certified. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 824-25 (S.D. Ohio 2012); *Mitchell*, 2014 WL 1319519, at \*11. As one court explained, "If a class action may not be brought unless a defendant first is afforded an opportunity to cure the alleged breach, then the phrase 'a class of consumer may not proceed in a class action' would not make sense. There would be nothing to proceed with because no case would have been brought." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d at 825. GM assumes this is the case and contends that Murphy's MMWA claim and Milavanava's MMWA claim related to her first Cruze must be dismissed because Murphy and Milavanava have traded in their Cruzes, and, as a result, will be unable to provide GM with a

notice to GM, *see* Compl. ¶ 146, and under the express terms of the warranty, written notice gives GM "an opportunity to make any needed repairs," limited warranty 40. Drawing all inferences in favor of the non-moving party, Plaintiffs have alleged compliance with the MMWA's requirement of affording GM "a reasonable opportunity to cure [ ] a failure to comply [with any obligation under any written or implied warranty]." 15 U.S.C. § 2310(e). *See Lewis v. Mercedes-Benz USA, LLC*, No. 03 Civ. 4000, 2004 WL 3756384, at *3-4 (N.D. Ga. Sept. 13, 2004) (dismissing MMWA claim when the vehicle's warranty had written notice requirement and plaintiff did not provide written notice).

Because Plaintiffs have sufficiently alleged compliance with the MMWA's opportunity to cure requirement, the Court declines to dismiss Wilbanks, Murphy, and Milavanava's claims. The Court need not reach Plaintiffs' alternative argument that GM's knowledge of the defect at the time of sale constituted an opportunity to cure. *See* Compl. ¶ 225.

Accordingly, Defendants' motion to dismiss the MMWA claim is GRANTED as to Feliciano, but DENIED as to Wilbanks, Murphy, and Milavanava,

D. State Consumer Protection Laws on Deceptive Practices

1. N.Y. Gen. Bus. Law § 349 (Count I)

Feliciano and Murphy bring a claim for violation of New York General Business Law § 349. Defendants contend that dismissal is warranted because (a) Plaintiffs are unable to plead a *prima facie* case, and (b) Murphy's claims are barred by the statute of limitations.

---

future opportunity to cure the alleged defect. In *Mitchell*, the district court dismissed the plaintiff's claim for the same reason, holding, "[i]t is not possible for [p]laintiff to provide GM with an opportunity to cure the alleged defect because [p]laintiff has traded in the Cruze for a new GM vehicle." 2014 WL 1319519, at *11. The Court need not reach this determination, as, unlike in *Mitchell*, Plaintiffs' have alleged that they gave GM an opportunity to cure prior to filing suit.

a. *Prima Facie* Case Under § 349

New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. § 349(a). To bring a *prima facie* case of deceptive business practices under § 349, a plaintiff must demonstrate "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Omissions may form the basis of a deceptive practice claim. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995). Deceptive acts are acts "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Goldsmith*, 230 F.3d at 521. A deceptive practice "need not reach the level of common-law fraud to be actionable under section 349." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (citing *Stutman v. Chem. Bank*, 731 N.E.2d 608,612 (N.Y. 2000)).

Feliciano and Murphy argue that GM "engaged in deceptive acts or practices when it failed to disclose material information to Plaintiffs . . . which was known to [GM] at the time of the sale." Compl. ¶ 112. Plaintiffs claim that they were injured by the omission. *Id.* ¶¶ 115-18. GM contends that any omission was not actionable because GM did not have a duty to disclose. Additionally, GM argues that it did disclose the possibility of defects. The Court will address GM's arguments in turn.

In *Oswego*, New York's highest court held that a consumer may establish a duty to disclose under § 349 if the business "alone possesses material information" and fails to provide it. 647 N.E.2d at 745. The Court explained:

> In the case of omissions in particular . . . the statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each

18

> consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information.

*Id.*

Plaintiffs argue that because GM alone possessed material information about the antifreeze defect, GM had a duty to disclose, and, therefore, GM's omission constituted a violation of § 349. GM contends that they did not have exclusive knowledge of the defect, because, as Plaintiffs argue, "consumer complaints about the defect were available to the public via media stories and the Internet." Def. Mem. 42. Although Plaintiffs allege that consumers complained publicly about their Cruzes, Compl. ¶¶ 9, 15-16, the Court cannot determine whether the complaints contained material information relevant to the defect, or if the existence of such complaints is sufficient to relieve GM of a duty to disclose. Additionally, taking GM's argument to its logical conclusion would allow businesses to avoid liability for deceptive practices in cases where consumers publicly lodged complaints, an absurd outcome inconsistent with the statute's stated purpose. *See* N.Y. Gen. Bus. § 349(a) ("Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."). GM also argues that under *Gomez-Jimenez v. New York Law School*, the § 349 claims should be dismissed because the "omitted information was available to plaintiffs and used by reasonable consumers." Def. Mem. 43*; see Gomez-Jimenez v. New York Law School*, 943 N.Y.S.2d 834, 857 (Sup. Ct. N.Y. County 2012). Again, the Court cannot determine at this stage that information about the Cruzes' alleged antifreeze defect was "available to plaintiffs and used by reasonable consumers." The Court therefore, holds, that Plaintiffs have plausibly alleged a material omission.

GM also contends that the warranty "did disclose that the Cruze might contain defects,

and promised to repair any defects that might manifest."[14]  Def. Mem. 40.  To support their

argument that "a promise to repair, accompanied by a disclaimer that the product may contain

defects" is sufficient to undermine a §349 claim, Defendants point to *Against Gravity Apparel,*

*Inc. v. Quarterdeck Corp.*, a case involving software that was not Y2K compliant.  699 N.Y.S.2d

368, 369 (N.Y. App. Div. 1999).  In *Against Gravity*, the New York Appellate Division

concluded that the defendant "[did] not warrant that the operation of the [s]oftware will be

uninterrupted or error free."  *Id.*  The court held, "[t]his last disclaimer, together with the 90-day

warranty period, also undermine any claim under General Business Law § 349 of a materially

misleading or deceptive omission implying Y2K compliance."  *Id.* at 370; *see also Moore v.*

*Microsoft Corp.*, 741 N.Y.S.2d 91, 92 (N.Y. App. Div. 2002).

The Court declines to dismiss the § 349 claim based on *Against Gravity* because *Against*

*Gravity* does not address the holding of *Oswego*, where, as discussed *supra*, New York's highest

court established the possibility of a § 349 claim based on material omissions when there is a

duty to disclose.  *See Oswego*, 647 N.E.2d at 745; *see also In re Porsche Cars N. Am., Inc.*, 880

F. Supp. 2d at 861-62 (interpreting New York law and declining to dismiss § 349 claim based on

*Against Gravity*); *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 870 (E.D. Mich. 2009)

(same).  Additionally, other courts have held that a "warranty defense is generally unavailable

where there are allegations of intentional concealment of a defect or where a defendant has an

obligation to disclose the defect."  *Doll*, 814 F. Supp. 2d at 546.  Therefore, the Court holds that

Feliciano and Murphy have stated a § 349 claim.

　　　b.  New York Statute of Limitations

Defendants argue that Murphy's claim is time barred.  Murphy moved to join this case in

---

[14] The warranty states, "Defects in the mechanical, electrical, sheet metal, paint, trim, and other components
of your vehicle may occur at the factory or while it is being transported to the dealer facility."  Limited
warranty 23.

December 2014, more than three years after he purchased his Cruze on January 31, 2011. "Actions brought pursuant to [s]ection 349 must be commenced within three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute." *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012). Injury, or accrual, occurs when "all of the factual circumstances necessary to establish a right of action have occurred." *Gaidon v. Guardian Life Ins. Co. of America*, 750 N.E.2d 1078, 1083 (N.Y. 2001). In § 349 cases, "[a]ccrual is not dependent upon any date when discovery of the alleged deceptive practice is said to occur." *Statler*, 841 F. Supp. 2d at 648.

Plaintiffs allege that the conduct at issue is Defendants' sale of its product to Feliciano and Murphy, where GM "willfully failed to disclose and actively concealed the [defect]," made "untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts," "failed to disclose material information . . . which was known to [GM] at the time of the sale," and "deliberately withheld the information . . . to induce the consumer to enter into a transaction." Compl. ¶¶ 109-113. Because Murphy claims to have been induced into the transaction, and to have "overpaid for [his] vehicle[ ]," Compl. ¶ 113, 115, 17, the injury occurred on January 31, 2011, the purchase date. Although he argues that there were material omissions in Defendants' post-sale activity, Pl. Mem. 43, Murphy does not raise a § 349 claim based on post-sale conduct. Therefore, Murphy's § 349 claim is barred by the statute of limitations.

Murphy requests that the Court apply equitable tolling. Under the principle of equitable tolling, the statute of limitations "does not begin to run until 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on

notice.'" *Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir. 1985). For equitable tolling to apply, plaintiff must plead that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period' and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012); *see also Jackson*, 845 F. Supp. 2d at 533 ("Ultimately, tolling can apply only when a plaintiff has acted with reasonable diligence and can show extraordinary circumstances that justify the requested toll.").

Murphy alleges that Defendants engaged in continued concealment of the defect during the limitations period by denying that there was a defect when he brought his vehicle in for repair. Compl. ¶¶ 72-73. Yet Murphy admits that in 2012, he "had knowledge of the facts for accrual of his claims against Defendants." Pl. Mem. 43. Murphy noticed the smell in 2012, brought his Cruze to be repaired in October 2013 and March 2014, and traded in his vehicle in October 2014. Compl. ¶¶ 72- 76. Although Murphy received a letter from GM about the defect in October 2014, Compl. ¶ 77, Ex. A, "the issue is not whether plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit," *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 464 (S.D.N.Y. 2014). Having discovered the problem in 2012, Murphy's delay until December 2014 reflects a lack of due diligence. Under these circumstances, the Court shall not apply equitable tolling.

Accordingly, Defendants' motion to dismiss the § 349 claim is GRANTED as to Murphy, but DENIED as to Feliciano.

2.  Florida Deceptive and Unfair Trade Practices Act (Count XIV)

Milavanava alleges a violation of Florida's Deceptive and Unfair Trade Practices Act

("FDUPTA").  The FDUPTA is intended to "protect the consuming public and legitimate

business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

Fla. Stat. § 501.202(2).  "A deceptive practice is one that is 'likely to mislead' consumers."

*Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006) (citing *Davis v. Powertel,*

*Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000)).  "[D]eception occurs if there is a

representation, omission, or practice that is likely to mislead the consumer acting reasonably in

the circumstances, to the consumer's detriment."  *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d

1281, 1284 (11th Cir. 2007) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777

(Fla. 2003)).  Additionally, the "FDUTPA constitutes a substantive law which is to be construed

liberally when administered by the courts."  *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,

693 So.2d 602, 609 (Fla. Dist. Ct. App. 1997).

A consumer claim for damages under the FDUTPA has three elements: "(1) a deceptive

act or unfair practice; (2) causation; and (3) actual damages."  *Rollins,* 951 So.2d at 869.

Milavanava argues that GM "engaged in [ ] deceptive acts or practices when it failed to disclose

material information to Plaintiffs . . . which was known to [GM] at the time of the sale."  Compl.

¶¶ 112, 245.  Milavanava contends that GM "knew or should have known of the defective nature

. . . [and] continued to sell the vehicles to consumers without properly disclosing the [a]ntifreeze

[l]eakage [d]efect or correcting this defect."  *Id.* ¶ 246.  The complaint alleges causation and

damages.  *Id.* ¶¶ 247-49.

As with the claims under New York law, Defendants argue that they did not engage in a deceptive act because they disclosed the potential existence of a defect in their warranty. Def. Mem. 40. The Court declines to dismiss this claim under the warranty defense at this stage.[15] Defendants also contend that they did not have a duty to disclose, but a duty to disclose is not an element of a consumer claim for damages under the FDUPTA. The Court holds, therefore, that Milavanava has adequately stated a claim for a violation of the FDUPTA.

Accordingly, Defendants' motion to dismiss Milavanava's FDUPTA claim is DENIED.

3.   Michigan Consumer Protection Act (Count VI)

Wilbanks contends that Defendants violated the Michigan Consumer Protection Act ("MCPA") by failing to reveal the defect to consumers, representing that the Cruze was safe and reliable, and failing to inform the National Highway Traffic Safety Administration ("NHTSA") of the antifreeze defect. Compl. ¶¶ 176-80. Defendants argue that this claim must be dismissed because Defendants' conduct is exempt from liability under the MCPA. The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). The exemption is an affirmative defense, waived by a defendant if not asserted in time. *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 517 n.13 (Mich. 2007).

To determine if a transaction is exempt from the MCPA, "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific

---

[15] Defendants cite two cases where Florida district courts upheld written warranties against pre-contract oral misrepresentations in distinct factual circumstances. *See Sherwin-Williams Co. v. Auto Body Tech, Inc.* No. 12 Civ. 23362, 2014 WL 2177961, at *4-5 (S.D. Fla. May 26, 2014); *Century Land Development, L.P. v. FFL Development, L.L.C.*, No. 07-14377, 2008 WL 1850753, at *4 (S.D. Fla. April 4, 2008). Both cases involved "reliance upon oral statements which [are] at variance with the written documents." *See Sherwin-Williams Co.*, 2014 WL 2177961, at *4; *see Century Land Development*, 2008 WL 1850753, at *4. Neither case requires the Court to dismiss the FDUPTA claim at issue.

misconduct alleged is prohibited." *Id.* at 518; *see also Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999). The Michigan Supreme Court construed the exemption broadly in *Liss v. Lewiston-Richards, Inc.*, finding that a contractor's building of a home was a transaction "specifically authorized by law" in a case where the consumer claimed that the home was not built on time nor in a workman-like manner. 732 N.W.2d at 516. The court relied on the licensing and regulation regime, noting that builders are licensed under state law and regulated by the Residential Builders' and Maintenance and Alteration Contractors' Board. *Id.* at 520. The court also looked to the statutory definition of a residential builder and found that a residential home builder is "specifically authorized" to contract to build homes. *Id.* The court held that because the home builder was doing the work for which he was specifically licensed, the "general transaction" was "specifically authorized by law" and the transaction of contracting to build a home was exempt from the MCPA. *Id.* at 521.

Michigan courts continue to construe the exemption broadly.[16] For instance, in *Alongi v. Bombardier Recreational Products, Inc.*, a district court found an exemption for the sale, design, and manufacture of recreational boats due to the regulation of manufacturing by the Federal Boat Safety Act, which is enforced by the Secretary of Homeland Security. No. 12–13374, 2013 WL 718755, at *4 (E.D. Mich. Feb. 27, 2013). *See also Jimenez v. Ford Motor Credit Co.,* No. 322909, 2015 WL 9318913, at *6-7 (Mich. Ct. App. Dec. 22, 2015) (finding exemption for the sale of cars by a car dealer due to dealer regulation by Michigan's Motor Vehicle Code and the administration of the code by the Secretary of State). *But see State Farm Mut. Auto Ins. Co. v.*

---

[16] However, in *Woodger v. Taylor Chevrolet, Inc.*, a district court in the Eastern District of Michigan declined to exercise supplemental jurisdiction on the question of whether a car manufacturer was exempt from the MCPA and held, "[t]aking [defendants] theory to its logical conclusion, any transaction that is in any way regulated by a governmental board or officer acting under statutory authority, even minimally, would be wholly exempt from the MCPA. Such a far reaching interpretation could, potentially, eviscerate the protections the statute was designed to provide." No. 14 Civ. 11810, 2015 WL 5026176, at *7 (E.D. Mich. Aug. 25, 2015).

*BMW of N. Am. LLC*, No. 08-12402, 2009 WL 2447612, at *7 (E.D. Mich. Aug. 7, 2009)
(finding no exemption for MCPA claim against car dealer, observing that Defendant "has not
asserted that NHTSA regulates warranties" and "Michigan courts have found automobile dealers
liable under the MCPA").

Defendants argue that the sale and manufacturing of motor vehicles and the reporting of
defects to NHTSA is highly regulated, pointing to regulations by NHTSA and the Secretary of
Transportation. *See, e.g.,* Federal Motor Vehicle Safely Act, 49 U.S.C. §§ 30101 *et seq.*[17]
Defendants also contend that the sale of motor vehicles through dealerships is regulated by the
state's licensing regime. *See* Mich. Comp. Laws. §§ 257.248 *et seq.*  Given the regulated nature
of the industry, and the Michigan Supreme Court's broad interpretation of the exemption in *Liss*,
the Court holds that the exemption applies.[18]

Wilbanks points to *Hoff v. Mercedes-Benz USA, LLC*, decided before *Liss*, where the
Michigan Circuit Court found that the sale of cars was not exempt from the MCPA.  No. 04 836
NZ, 2005 WL 3723201 at *8 (Mich. Cir. Ct. Dec. 30, 2005).  The court held, "although
automobile dealers must be licensed, the specific act of selling an automobile or manufacturing
an automobile is not regulated and therefore that act is not excluded from the [M]CPA." *Id.*  The
Court finds that this decision is inconsistent with the subsequent holding of *Liss. See* 732
N.W.2d at 515-21.  Additionally, the Court cannot conclude that automobile manufacturing is
not regulated. *See* 49 U.S.C. §§ 30101 *et seq.*  Wilbanks also asks the Court to consider other
Michigan cases where plaintiffs brought MCPA claims against car manufacturers.  However, the

---

[17] This law was subsequently amended by Fixing America's Surface Transportation Act, Pub. L. No. 114-94, 129
Stat. 1312 (Dec. 4, 2015).  The amendments do not affect this analysis.

[18] "Where the state's law is unclear . . . the federal court must do its best to reach the result that would have
been reached if the case had been brought in state court." *Boniuk v. N.Y. Med. Coll,.* 535 F. Supp. 1353,
1356 (S.D.N.Y. 1982) *aff'd*, 714 F.2d 111 (2d Cir. 1982).

only case Wilbanks cites that was decided after *Liss* is *Gorman v. American Honda Motor Co.*, and *Gorman* does not address the applicability of the MCPA exemption. 839 N.W.2d 223 (Mich. Ct. App. 2013). Because the exemption is an affirmative defense and must be raised by defendants, *Gorman* is inapposite.

Accordingly, Defendants motion to dismiss Wilbank's MCPA claim is GRANTED.

E.   Common Law Claims

1.   Negligence (Count VII)

Defendants move to dismiss Plaintiffs' negligence claim based on the economic loss doctrine. In *East River S.S. Corp. v. Transamerica Delaval, Inc.,* the Supreme Court, discussing the economic loss doctrine, observed that "[d]amage to a product itself is most naturally understood as a warranty claim." 476 U.S. 858, 872(U.S. 1986). The Court explained, "the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.* at 868.

New York, Michigan, and Florida have adopted the Supreme Court's approach, and have disallowed common law recovery in tort in cases "where the claimed losses flow from damage to the property that is the subject of the contract." *Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 645 N.E.2d 1195, 1199 (N.Y. 1995). As the New York Court of Appeals explained in *Bocre*, a case involving a breach of warranty, "Allowing the purchaser to recover in tort for what is, in sum and substance, a commercial contract claim . . . would grant the purchaser more than the 'benefit of [the] bargain' to which the purchaser agreed." *Id.* at 1196 (citing *E. River*, 476 U.S. at 873); *see Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783, 784-85 (Mich. Ct. App. 2002) ("[W]here a purchaser's expectations in a sale are frustrated

because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' loss."); *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos. Inc.*, 110 So.3d 399, 406 (Fla. 2013) (limiting the economic loss doctrine to products liability and situations where "the policy considerations are substantially identical to those underlying the product liability-type analysis"). Accordingly, Plaintiffs' claim of economic loss due to the loss in value of their vehicles, Compl. ¶197, cannot stand.

Plaintiffs argue that the economic loss doctrine does not bar their claim for "additional or 'other' damages," damages for "the noxious smell that sickens Plaintiffs and stings their eyes when they drive their Chevrolet Cruzes, the cost of time and cleaning the film off the windows" and expenses Plaintiffs incurred to repair the vehicles. Pl. Mem. 39. Plaintiffs are incorrect. First, the personal injury exception to the economic loss rule does not apply in this case. The Court has already found that Plaintiffs have not brought a claim for damages related to personal injury. Second, it is well settled that the economic loss rule prohibits recovery for "injury to the product itself or consequential losses flowing therefrom." *Bocre Leasing Corp.*, 645 N.E.2d at 1199. Therefore, the economic loss rule bars Plaintiffs' negligence claim.

Accordingly, Defendant's motion to dismiss Plaintiffs' negligence claim is GRANTED.

2.   Fraudulent Concealment (Count IX)

The Federal Rules of Civil Procedure require fraud to be pleaded with particularity. [19] Fed. R. Civ. P. 9(b). In the case of fraudulent concealment, Rule 9(b) requires that a plaintiff specify "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what

---

[19] Defendants also argue that Plaintiffs' fraudulent concealment claim must be dismissed because the economic loss doctrine bars the fraudulent concealment claim. Resolution of this argument is unnecessary because the fraudulent concealment claims were not pleaded with the required particularity under Fed. R. Civ. P. 9(b).

defendant obtained through the fraud." *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (citing *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Hldgs. Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)). "While scienter may be averred generally, 'plaintiffs are still required to plead the factual basis which gives rise to a strong inference of fraudulent intent.'" *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997).

Additionally, to maintain a fraudulent inducement claim under New York law, Plaintiffs must plausibly allege, "(1) the defendant made a material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation and (4) the plaintiff suffered damage as a result of such reliance." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (citing *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006)). Fraudulent concealment requires the fraudulent inducement elements with the additional requirement that Plaintiffs "show that the defendant had a duty to disclose the material information." *Id.* Fraudulent concealment claims under Florida and Michigan law also require a duty to disclose. *See Aprigliano*, 979 F. Supp. 2d at 1342 (quoting *Philip Morris USA, Inc. v. Hess*, 95 So.3d 254, 259 (Fla. Dist. Ct. App. 2012)); *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013).

Plaintiffs have failed to meet the heightened pleading standard for fraudulent concealment. The fraud claim is based on a material omission, but no Plaintiff identifies the person or persons responsible for the failure to disclose, nor the context of the omission. *See Weaver*, 172 F.R.D. at 102 (explaining, in the fraudulent omission context, that Rule 9(b) requires the plaintiff to "specifically [identify] the representations, advertisements, and promotional materials that omitted the reference to the defective child seats, misled him, and upon which he relied"); *see also Aprigliano*, 979 F. Supp. 2d at 1343. In this case, although

Plaintiffs identify a few specific advertisements, *see* Compl. ¶ 6-9, they do not claim that any

Plaintiff viewed the advertisements. Therefore, Plaintiffs cannot plausibly allege reliance, and

the Court concludes that under Rule 9(b) Plaintiffs have failed to plead a *prima facie* case of

fraudulent concealment.

To the extent that Plaintiffs' fraudulent misrepresentation claim is based on

misrepresentations "in advertising and other forms of communication," Compl. ¶¶ 6-8, 204, this

claim must also be dismissed. *See Weaver*, 172 F.R.D. at 101. To meet the heightened pleading

requirements for fraudulent misrepresentation, the "[c]omplaint must specify the time, place,

speaker, and content of the alleged misrepresentation." *Id.* Plaintiffs have failed to do so.[20]

Accordingly, Defendants' motion to dismiss Plaintiffs' fraudulent concealment claim is

GRANTED.

### 3. Unjust Enrichment (Count XI)

Defendants move to dismiss Plaintiffs' claim for unjust enrichment, arguing that the

claim cannot be maintained when a limited warranty governs. Unjust enrichment is a quasi-

contract claim, "an obligation the law creates in the absence of any agreement." *Diesel Props*

*S.r.l. v. Greystone Business Credit II LLC*, 631 F. 3d 42, 54 (2d Cir. 2011) (citations omitted).

"[W]here a valid warranty governs the subject matter of a suit, a plaintiff cannot recover in

quasi-contract, and it is appropriate to dismiss an unjust enrichment claim." *Haag*, 969 F. Supp.

2d at 317.

Plaintiffs contend that they should be allowed to plead unjust enrichment as an alternative

theory of recovery. Courts have permitted plaintiffs to pursue both unjust enrichment and breach

---

[20] Even if the claim were sufficiently pleaded, Plaintiffs cannot maintain a claim for fraudulent
misrepresentation based on puffery. *See Meija v. Jurich*, 781 So.2d 1175, 1177 (Fla. Dist. Ct. App. 2001)
("An action for fraud generally may not be predicated on statements of opinion or promises of future action,
but rather must be based on a statement concerning a past or existing fact.").

of contract claims in cases "[w]here there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue." *Marshall,* 51 F. Supp. 3d at 471. There is no such dispute in this case. GM's limited warranty covers the subject matter at issue. [21] *See* Def. Mem. in Reply 28. Therefore, Plaintiffs' unjust enrichment claim cannot stand. *See Marshall*, 51 F. Supp. 3d at 471 (dismissing unjust enrichment claim when there is no "bona fide" dispute); *Haag*, 969 F. Supp. 2d at 317 ("Having chosen to sue for breach of warranty, plaintiff cannot plead an alternative quasi-contract claim in the hopes of modifying the terms of that warranty."); *Doll*, 814 F. Supp. 2d at 551 (analyzing New York law and dismissing claim on same grounds). *But see Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) (holding that a party cannot be successful on both an unjust enrichment and contract claim but allowing plaintiff to plead in the alternative).

Unjust enrichment is similarly analyzed as a quasi-contract claim in Florida and Michigan, and, under the law of these states, dismissal is appropriate when a valid contract governs. *See Atl. Estate Acquisitions, Inc. v. DePierro*, 125 So.3d 889, 893-94 (Fla. 2013); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009); *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796-97 (Mich. Ct. App. 1993); *Lipov v. La-Pac. Corp.*, No. 12 Civ. 439, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013).

Accordingly, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is GRANTED.

F.  Opportunity to Replead

Plaintiffs have requested the opportunity to replead. Federal Rule of Civil Procedure 15(a) requires that leave to amend be freely granted "when justice so requires." Fed. R. Civ. P.

---

[21] GM does not dispute that Feliciano's car had a warranty issued by GM. GM's position is that the warranty expired by the time she purchased the car, and the extended warranty was not issued by GM.

15(a)(2).  However, the Court is not required to provide an opportunity to replead when an amended pleading would be futile.  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Plaintiffs have already amended the complaint three times.  Because the Court believes that any amended pleading would be futile, the Court shall not permit additional amendments.

## CONCLUSION

For the reasons stated above, it is ORDERED

1.  GM's motion to dismiss the express warranty claim is GRANTED as to Feliciano and DENIED as to Wilbanks, Murphy, and Milavanava.

2.  GM's motion to dismiss the implied warranty claim is GRANTED.

3.  GM's motion to dismiss the MMWA claim is GRANTED as to Feliciano, but DENIED as to Wilbanks, Murphy, and Milavanava.

4.  GM's motion to dismiss the N.Y. Gen. Bus.  Law § 349 claim is GRANTED as to Murphy, but DENIED as to Feliciano.

5.  GM's motion to dismiss the FDUPTA claim is DENIED.

6.  GM's motion to dismiss the MCPA claim is GRANTED.

7.  GM's motion to dismiss the negligence claim is GRANTED.

8.  GM's motion to dismiss the fraudulent concealment claim is GRANTED.

9.  GM's motion to dismiss the unjust enrichment claim is GRANTED.

10.  Plaintiffs are not granted leave to replead.

The Clerk of Court is directed to terminate the motion at ECF No. 37.

SO OREDERED

Dated: March 31, 2016
      New York, New York

ANALISA TORRES
United States District Judge